Argued and submitted November 26, 2002, affirmed February 5, 2003

# STATE OF OREGON,
*Respondent,*

*v.*

# NORMA LILIA GARCIA MAYORGA,
*Appellant.*

## CF97-0307; A112567

62 P3d 818

Rebecca Duncan, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Julie A. Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

**LANDAU, P. J.**

Defendant appeals a judgment of conviction for two counts of first-degree possession of a forged instrument. ORS 165.022. She argues that the forged documents that she possessed are not the sort of documents that support a conviction for first-degree forgery. She also argues that, even if they do, the two convictions should be merged. We affirm, writing to address only the sufficiency of the evidence as to the convictions.

The relevant facts are not in dispute. Defendant was found in possession of a forged resident alien card and a forged social security card. She was charged with two counts of first-degree possession of a forged instrument under ORS 165.022, which provides that a person commits that crime "if, knowing it to be forged and with intent to utter same, the person possesses a forged instrument of the kind specified in ORS 165.013." The forged instruments specified in ORS 165.013(1) are:

"(a)  Part of an issue of money, securities, postage or revenue stamps, or other valuable instruments issued by a government or governmental agency; or

"(b)  Part of an issue of stock, bonds or other instruments representing interests in or claims against any property or person; or

"(c)  A deed, will, codicil, contract or assignment; or

"(d)  A check for $750 or more, a credit card purchase slip for $750 or more, or a combination of checks and credit card purchase slips that, in the aggregate, total $750 or more, or any other commercial instrument or other document that does or may evidence, create, transfer, alter, terminate or otherwise affect a legal right, interest, obligation or status; or

"(e)  A public record."

At trial, defendant moved for a judgment of acquittal, arguing that the two forged documents that she possessed are not included in the list of forged instruments specified in ORS 165.013(1). The trial court denied the motion, concluding that the resident alien and social security cards

are "other document[s] that do[ ] or may evidence, create, transfer, alter, terminate or otherwise affect a legal right, interest, obligation or status" within the meaning of ORS 165.013(1)(d).

On appeal, defendant again asserts that the forged resident alien and social security cards are not included in the list of forged instruments specified in ORS 165.013(1). According to defendant, the trial court erred in concluding that the documents are "other documents" that evidence a legal right, interest, obligation, or status under ORS 165.013(1)(d). She reasons that, under the interpretive principle of *ejusdem generis*, the "other documents" to which the statute refers are implicitly limited to "other *commercial* documents" because the preceding provisions of the subsection in which the phrase appears all pertain to documents evidencing commercial transactions.

The state argues that defendant misreads the statute, which already specifically refers to "other commercial instrument[s]" and lists, *in addition* to that category, "other document[s]" that evidence a "legal right, interest, obligation or status." Thus, the state argues, the final "other documents" clause is not limited to those pertaining to purely commercial transactions. We agree with the state.

In disposing of the parties' arguments, we attempt to determine, as a matter of law, the intended meaning of the relevant provisions of the statute. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We begin with the text of the statute in its context, applying rules of textual construction that we presume the legislature employed in enacting the provision at issue. *Id.*

As we have noted, ORS 165.013(1)(d) provides that among the forged instruments that may be the basis for a first-degree forgery possession charge are:

> "A check for $750 or more, a credit card purchase slip for $750 or more, or a combination of checks and credit card purchase slips that, in the aggregate, total $750 or more, or any other commercial instrument or other document that does or may evidence, create, transfer, alter, terminate or otherwise affect a legal right, interest, obligation or status[.]"

Thus, by its terms, the statute includes five different categories of instruments:

(1) A "check for $750 or more";

(2) A "credit card purchase slip for $750 or more";

(3) A "combination of checks and credit card purchase slips" that total $750 or more;

(4) Any "other commercial instrument"; or

(5) Any "other document that does or may evidence, create, transfer, alter, terminate or otherwise affect a legal right, interest, obligation or status."

ORS 165.013(1)(d).

Of particular importance is the fact that the legislature separately identified "other commercial instrument" as a category of forged instruments that is included in ORS 165.013(1)(d). Following that category is an additional category, namely, any "*other* document that does or may evidence * * * a legal right, interest, obligation or status." The only sensible reading of the wording is "other" than the documents that already have been described, namely, *other than a commercial instrument*. Any other reading of the statute—in particular, a reading that would construe "other document" to mean "other *commercial* document," as defendant suggests— would run afoul of at least two fundamental rules of textual construction.

First, it would violate ORS 174.010, which declares that the function of the court in interpreting a statute is "not to insert what has been omitted, or to omit what has been inserted." To read the statute as defendant suggests effectively deletes the word "other" from the phrase "other document" and then effectively inserts the word "commercial" where the legislature has chosen not to include it. We are not at liberty to revise the legislature's handiwork in that fashion. *See, e.g., State v. Rogers*, 330 Or 282, 290, 4 P3d 1261 (2000) ("We may not insert what the legislature has omitted or omit what it has inserted.").

Second, it would violate the rule that, wherever possible, we must interpret statutes so as to give effect to all provisions, leaving none to be meaningless surplusage. *Bolt v. Influence, Inc.*, 333 Or 572, 581, 43 P3d 425 (2002) ("we are to construe multiple provisions, if possible, in a manner that will give effect to all"); *EQC v. City of Coos Bay*, 171 Or App 106, 110, 14 P3d 649 (2000) ("We are required, if possible, to avoid construing statutes in a way that renders any provision meaningless."). In this case, if "other document" actually means "other *commercial* document," then the immediately preceding phrase, "any other commercial instrument," becomes completely meaningless.[1]

Prior versions of the statute, and their judicial construction, confirm what the current text so strongly suggests. *See Owens v. Maass*, 323 Or 430, 435, 918 P2d 808 (1996) (earlier versions and judicial construction of them are part of the context of a statute). The phrase "any other commercial instrument or other document that does or may evidence * * * a legal right, interest, obligation or status" originally was enacted in 1971 as part of what is now ORS 165.013(1)(c), so that the original subsection read:

"A deed, will, codicil, contract, assignment, commercial instrument or other document which does or may evidence, create, transfer, alter, terminate, or otherwise affect a legal right, interest, obligation or status[.]"

Or Laws 1971, ch 743, § 153(1)(c).

The Oregon courts interpreted the "other document" reference to apply to more than commercial instruments. In *State v. Jackson*, 35 Or App 741, 746, 582 P2d 837 (1978),

---

[1] It is true that ORS 165.013(1)(d) first refers to "other commercial instrument" and then refers to "other document." At least arguably, reading "other document" to mean "other *commercial* document" is not completely redundant of the reference to "other commercial instrument," because the former phrase employs the word "document" while the latter employs the word "instrument." The problem is that the statute defines the term "instrument" very broadly to include any "document" that is used for the purpose of "reciting, embodying, conveying or recording information or constituting a symbol or evidence of value, right, privilege or identification." ORS 165.002(1). Thus, there could be no commercial "document" that would not also be a commercial "instrument."

*rev den*, 285 Or 195 (1979), for example, we held that a forged savings passbook was an "other document" that evidenced a legal right under ORS 165.013(1)(c) (1977). Similarly, in *In re Kirkman*, 313 Or 181, 184, 830 P2d 206 (1992), the Supreme Court concluded that a forged dissolution judgment is, among other things, a forged "document which does or may evidence * * * a legal right * * * or status."[2]

In 1993, the legislature amended the statute to include the first portion of what is now ORS 165.013(1)(d), pertaining to checks and credit card purchase slips. Or Laws 1993, ch 680, § 25. In the process, the legislature moved the phrase that begins with "commercial instrument or other document" so that it now follows the reference to the checks and credit card purchase slips. *Id.* The wording of the "commercial instrument or other document" clause that previously had been construed by the Oregon courts remained unchanged.

Defendant insists that, although the legislature did not change the wording of the clause, by moving it to a new section that now begins with a reference to specific commercial instruments, the legislature apparently intended to alter its meaning. Specifically, defendant argues that, because the clause now follows such a list of specific commercial instruments, the interpretive principle of *ejusdem generis* requires that—notwithstanding what the courts may have said the wording once meant—we now must give it a commercial "gloss."

█ █  We reject defendant's reliance on the principle of *ejusdem generis*. The principle has been explained in the following terms:

> "[W]hen the legislature chooses to state both a general standard and a list of specifics, the specifics do more than place their particular subjects beyond the dispute; they also refer the scope of the general standard to matters of the same kind, often phrased in Latin as *'ejusdem generis.'* "

---

[2] The court concluded that a forged dissolution judgment also is a forged "public record" within the meaning of ORS 165.013(1). *Kirkman*, 313 Or at 184-85.

*Bellikka v. Green,* 306 Or 630, 636, 762 P2d 997 (1988). Caution is warranted when applying the rule, both because of its uncertain justification[3] and because of its malleability.[4]

■     Accordingly, the rule applies in limited circumstances. *See generally* Norman J. Singer, 2A *Statutes and Statutory Construction* §§ 47:20-47:22, 293-304 (6th ed 2000) (describing qualifications to the application of *ejusdem generis*). It generally applies when a specific list of included items is followed by a "nonspecific or general phrase" at the end of the list. *Vannatta v. Keisling,* 324 Or 514, 533, 931 P2d 770 (1997); *see also State v. Moore,* 174 Or App 94, 99, 25 P3d 398 (2001) (principle applies when specific list is followed by an "open-ended 'catch-all' term"). It does not apply when its application would lead to redundancy or to a construction

---

[3] The rule is ancient, dating back at least to *The Archbishop of Canterbury's Case,* 76 Eng Rep 519, 520-21 (1596). In spite of its hoary nature, it has come under sustained attack in recent years on the ground that it does not accurately reflect the realities of legislative drafting or of ordinary communication. *See, e.g.,* Reed Dickerson, *The Interpretation and Application of Statutes* 249 (1975) (*ejusdem generis* and similar canons are "convenient fictions for deciding specific controversies * * * [that] should not be confused with what they caricature, measures of actual meaning").

[4] The rule, for example, requires that courts construe the more general clause to be limited by the common quality or characteristic that is reflected by the listed particulars. The trick, of course, is in describing the common quality or characteristic. In many cases, any number of possibilities are plausible.

In this case, for example, the listed particulars are three: a check for $750 or more, a credit card receipt for $750 or more, and a combination of checks and receipts totaling more than $750. Is the common quality or characteristic that the document evidences a commercial transaction? Or is it limited to commercial transactions involving $750 or more? In other words, must the common quality or characteristic be defined in terms of the broadest or the narrowest possibilities? Such matters are not answered by the rule itself.

It could be argued that, in this case, there is a fourth "particular," namely "any other commercial instrument." That simply adds to the mix the question of how broadly to define "commercial." The dictionary offers both broad and narrow definitional possibilities. "Commercial" is defined as "of, in, or relating to commerce." *Webster's Third New Int'l Dictionary* 456 (unabridged ed 1993). "Commerce," in turn, is defined as broadly as "social intercourse" or "dealings of any kind" and as narrowly as "the exchange or buying and selling of commodities esp. on a large scale and involving transportation from place to place." *Id.* The Oregon Revised Statutes similarly use the term both broadly, *see, e.g.,* ORS 36.450 (defining "commercial" as matters arising from "all relationships of a commercial nature" including those involving goods and services, exploitation agreements, distribution agreements, construction, insurance, licensing, factoring, leasing, consulting, engineering, financing, banking, and the transfer of data or technology), and narrowly, *see, e.g.,* ORS 194.005(1) ("commercial paper" means instruments such as "drafts, checks, certificates of deposit and notes").

that otherwise is at odds with the legislature's apparent intentions. *See, e.g., Sanders v. Oregon Pacific States Ins. Co.,* 110 Or App 179, 183, 821 P2d 1119 (1991), *aff'd,* 314 Or 521, 840 P2d 87 (1992) (rejecting application of *ejusdem generis* when it would result in creation of surplusage).

In this case, the statute at issue begins with a list of three particulars, namely, forged documents pertaining to commercial transactions involving $750 or more. ORS 165.013(1)(d). There follows the clause "or any other commercial instrument." *Id.* Then, after that, there appears the concluding clause "or other document that does or may evidence * * * a legal right, interest, obligation or status." *Id.*

It could be argued that the principle of *ejusdem generis* applies to the "any other commercial instrument" clause. That clause follows a list of specifically enumerated documents and is open-ended. But whether the rule also may apply to the "other document" clause and then be stacked on top of the preceding clause to which the rule also applies is debatable. That is particularly so in light of the fact that the concluding clause is not an open-ended catch-all clause in the usual sense. Instead, it contains its own wording of limitation, namely, that the "other document" must be one "that does or may evidence * * * a legal right, interest, obligation or status."

■　In any event, the application of the rule of *ejusdem generis* in the manner that defendant suggests would result in a construction of the statute that could not be reconciled with its wording, with the rule against surplusage, and with the construction of the statute reflected in prior judicial decisions. The rule is, after all, merely "an aid to statutory construction" and is not to be applied to reach a result contrary to the legislature's apparent intentions. *Britton v. Bd. of Podiatry Examiners,* 53 Or App 544, 553, 632 P2d 1273 (1981) (declining to apply rule as contrary to apparent legislative intent).

Defendant also argues that the legislative history reflects an intention to limit the "other document" clause to commercial documents. In making that argument, defendant relies on a snippet from the report of the Criminal Law Revision Commission that "[t]he more severe punishment is

reserved for those cases in which the writing is or purports to be part of an issue of * * * stock, bonds or other instruments representing claims against or interests in a commercial enterprise." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 153, 160 (Jul 1970).

Defendant's reliance on that bit of history is unwarranted for several reasons. To begin with, she fails to identify an ambiguity that justifies reliance on legislative history. *State v. Chakerian*, 325 Or 370, 378, 938 P2d 756 (1997) (commentary to the criminal code may not be consulted in the absence of statutory ambiguity).

Moreover, even assuming that it were proper to consult the commentary, defendant relies on a quotation taken out of context. The phrase on which she relies actually is part of a summary of the *New York* Revised Penal Law from which portions of what is now ORS 165.013(1) were derived.[5] In a separate paragraph, which defendant neglects to cite, the commentary summarizes the Oregon law. In that paragraph, in fact, the commentary specifically addresses the effect of the "other documents" wording and suggests that it is broad enough to include such noncommercial documents as plats and land surveys. Commentary at § 153, 160.

Finally, defendant's reading of the legislative history cannot be squared with what the courts have concluded with respect to the intended meaning of the statute. *Kirkman*, 313 Or at 184; *Jackson*, 35 Or App at 746.

We conclude that the trial court did not err in rejecting defendant's contention that the clause "other document that does or may evidence * * * a legal right, interest, obligation or status" refers only to documents of a commercial

---

[5] We note, in passing only, that the New York courts have given the similar wording that appears in ORS 165.013(1)(d) very broad effect. In *People v. Pena*, 169 Misc 2d 366, 642 NYS2d 807, 809-10 (NY Sup Ct 1996), the court read the "other instrument" clause to include "cloned" cell phones. More to the point, in *People v. Selim*, 227 AD2d 917, 644 NYS2d 448, 449 (NY App Div 4th Dept 1996), the court construed the "other instrument" clause to apply to a forged unemployment benefits application.

nature. Defendant does not contend that, if we reject her contention that the statute applies only to commercial documents, her possession of forged resident alien and social security cards is insufficient to support her convictions. The trial court, therefore, did not err in denying defendant's motion for a judgment of acquittal.

Affirmed.