Argued and submitted August 27, 2003, affirmed March 24, 2004

## STATE OF OREGON,
*Appellant,*

*v.*

## WILLIAM CHARLES WALKER,
*Respondent.*

### 01-1015; A117626

86 P3d 690

Kaye E. McDonald, Assistant Attorney General, argued the cause for appellant. With her on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Rankin Johnson IV, Deputy Public Defender, argued the cause for respondent. With him on the brief was Peter A. Ozanne, Executive Director, Office of Public Defense Services.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

LANDAU, P. J.

## LANDAU, P. J.

At issue in this case is whether the six-year statute of limitations for first-degree sodomy was triggered by a child telling her school teacher about the incident that gave rise to the offense. The trial court held that it was and dismissed the indictment against defendant, who was charged some eight years after the victim reported the incident to her teacher. We affirm.

The relevant facts are not disputed. H was born on March 21, 1986. In November 2000, H reported to police that defendant had sodomized her approximately eight years earlier, when she was six or seven years old. She had reported the incident to a teacher no later than September 8, 1993. There is no record that the teacher or anyone else reported the incident to police or to the Department of Human Services (DHS).

On February 8, 2001, defendant was charged with first-degree sodomy. ORS 163.405. He moved to dismiss the indictment on the ground that the prosecution had not been commenced within the statute of limitations. Defendant argued that, under ORS 131.125(2)(g), a sodomy prosecution involving a minor victim must be commenced within six years of a report to "a law enforcement agency or other governmental agency." According to defendant, H's report to her teacher constituted a report to the school district, which is a governmental agency, thereby triggering the six-year statute of limitations. Thus, he contended, the prosecution in this case, approximately eight years later, is time-barred.

The state argued that the prosecution had been timely commenced. According to the state, the reference to "other governmental agency" in ORS 131.125(2) means DHS only. The state reasoned that the six-year limitation period is triggered by a "report," which should be understood to mean the sort of report that is described in ORS 419B.010 and is required to be made either to a law enforcement agency or to DHS. Because H did not report either to a law enforcement agency or to DHS, the state concluded, her mere "disclosure" to her teacher did not trigger the statute of limitations.

The trial court rejected the state's argument, concluding that the statutory reference to "other governmental agency" cannot reasonably be interpreted to mean only one other agency, that is, DHS. The trial court reasoned that the legislature clearly knows how to refer to a specific governmental agency, as reflected in other statutes in which it did just that. The use of the broader term "other governmental agency," the court said, suggests that the legislature intended it to apply more broadly. The court granted defendant's motion and dismissed the indictment.

■ On appeal, the state assigns error to the trial court's ruling on defendant's motion. It again asserts that the statutory phrase "other governmental agency" must be understood to refer to only one governmental agency: DHS. Defendant again asserts that the statute refers to reports to *any* governmental agency.

We review the trial court's ruling for errors of law. *State v. Gehrke-Young*, 134 Or App 256, 259, 894 P2d 1239, *rev den*, 321 Or 340 (1995). In this case, the ruling turns on an issue of statutory construction. We therefore are guided by the interpretive principles set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), which require us to ascertain what the legislature most likely intended by examining the text in context and, if necessary, legislative history and other aids to construction.

ORS 131.125(2) provides, in part:

"A prosecution for any of the following felonies may be commenced within six years after the commission of the crime or, if the victim at the time of the crime was under 18 years of age, anytime before the victim attains 24 years of age or within six years after the offense is reported to a law enforcement agency or other governmental agency, whichever occurs first:

"* * * * *

"(g) Sodomy in the first degree under ORS 163.405."

By its terms, the statute of limitations for first-degree sodomy begins to run after the crime "is reported to a law enforcement agency or other governmental agency." The statute, however, does not state what constitutes a "report";

nor does it define the phrase "law enforcement agency or other governmental agency."

The state and defendant advance constructions of the latter phrase that are, respectively, extremely narrow and extremely broad. In our view, neither proposed construction is likely the one intended by the legislature, although we cannot reject either conclusively.

The state argues that the phrase should be understood quite narrowly to apply to either a law enforcement agency or DHS. The state arrives at that conclusion by two interpretive routes. First, it invokes a canon of construction: *ejusdem generis*. According to the state, because the phrase in dispute concludes with "other governmental agency," we must look to the preceding reference as a limitation on the otherwise open-ended reference. The state contends that, because the preceding reference is to law enforcement, "it limits the meaning of 'other governmental agencies' to agencies of the same general class as 'a law enforcement agency.'"

■ As we explained in *State v. Mayorga*, 186 Or App 175, 182-83, 62 P3d 818 (2003), the canon of construction known by the Latin expression *"ejusdem generis"* is little understood and much overused. It does not apply every time the legislature employs the term "other" in a statute. It applies when the legislature employs *a list* of specific items and follows that list with an open-ended, catch-all term. *Id.* at 182. The list of specifically enumerated items must be long enough to reveal the characteristics of a recognizable class to which the general term may be limited. *Bellikka v. Green*, 306 Or 630, 636, 762 P2d 997 (1988) ("when the legislature chooses to state both a general standard and a list of specifics, the specifics do more than place their particular subjects beyond the dispute; they also refer the scope of the general standard to matters of the same kind").[1] Moreover, the canon does not apply when doing so would lead to redundancy or to a construction that otherwise is at odds with the legislature's apparent intentions. *See, e.g., Sanders v. Oregon Pacific*

---

[1] As we explained in *Mayorga*, even then, the rule must be applied cautiously, for a given list may be explained in terms of any number of competing classifications. 186 Or App at 182 n 4.

*States Ins. Co.*, 110 Or App 179, 183, 821 P2d 1119 (1991), *aff'd*, 314 Or 521, 840 P2d 87 (1992) (rejecting application of *ejusdem generis* when it would result in creation of surplusage).

In this case, the state's reliance on *ejusdem generis* runs afoul of both of the foregoing limitations. To begin with, there is no list of specific items followed by an open-ended phrase. There is only one general item—"law enforcement agency"—followed by another—"other governmental agency." The logic of the canon simply does not apply. Moreover, the state's proposed construction leads to redundancy. If the term "other governmental agency" means "other law enforcement agency," then it amounts to surplusage, for the statute already applies to "law enforcement agenc[ies]." The state identifies no reason for the legislature to have said, in essence, that the statute of limitations begins to run when there is a report to "a law enforcement agency or other law enforcement agency."[2]

The state also arrives at its proposed construction by a second interpretive route that is somewhat more complicated, but no more persuasive. According to the state, we must construe ORS 131.125(2) in context, in this case, with other enactments concerning child abuse reporting. In particular, the state directs our attention to ORS 419B.010, providing that certain public or private officials reasonably suspecting that child abuse has occurred must "immediately report or cause a report to be made" either to a law enforcement agency or to DHS or its designee. ORS 419B.015. The state reasons that, because the child abuse "reports" that are referred to in ORS 419B.010 must be made either to a law enforcement agency or to DHS, it stands to reason that, when ORS 131.125(2) refers to reports of child abuse to a "law enforcement agency or other governmental agency," the "other governmental agency" must refer to DHS.

ORS 419B.015 is a double-edged sword, however. That statute demonstrates that, when the legislature wants

---

[2] Even if we could accept that construction, we fail to understand how DHS qualifies as a law enforcement agency. *See* ORS 419B.005(4) (defining "law enforcement agency" to mean any city or municipal police department, county sheriff's office, or the Oregon State Police).

to refer to a law enforcement agency or DHS, that is precisely what it says. In the case of ORS 131.125(2), the legislature did not do so. It did not refer to DHS or any other specific governmental agency. Instead, it referred generally to "other governmental agency." We cannot assume that the legislature did not mean what it said.

In addition, the state's reasoning assumes that the reference to "report" in ORS 419B.010 has the same meaning as the reference to "report" in ORS 131.125(2). The references in the former statute are to a somewhat more formalized "report" that includes names, addresses, ages, evidence of injuries, and the like. ORS 419B.015. It is not obvious from the text of ORS 131.125(2)—which seems to contemplate reports from the child victim—that such a formal report is required. *See, e.g., Springfield Utility Board v. Emerald PUD*, 191 Or App 536, 547-48 & n 12, 84 P3d 167 (2004) (the same statutory term may mean different things in different contexts). If that is so, then the logical connection between the two statutes breaks down and the basis for the state's proposed interpretation disappears.

Defendant's proposed construction is more literal and much more broad. Defendant suggests that the statute of limitations begins to run when there is a report to *any* government agency because the statutory reference to "other governmental agency" contains no qualifying wording.

The problem with defendant's proposed construction is that it, too, runs afoul of the admonition that we are to avoid redundancy, if possible. If, as defendant suggests, the reference to "other governmental agency" means "any other government agency," then the preceding reference to a "law enforcement agency" becomes redundant, as it plainly also is a governmental agency. Moreover, as the state is quick to point out, defendant's proposed interpretation would lead to the apparent absurdity that the statute of limitations would begin to run when a report is made to such governmental agencies as the Dungeness Crab Commission, the members of which have no obligation under ORS 419B.010 to pass along such information to appropriate investigative agencies. We do not eliminate interpretive possibilities merely because they may lead to absurd results, at least not at the first level

of analysis. *State v. Vasquez-Rubio*, 323 Or 275, 282-83, 917 P2d 494 (1996). That said, the state is correct that it is difficult to imagine that the legislature intended the broad construction that defendant proposes.

Defendant suggests an alternative interpretation that is less problematic. He contends that, at the least, ORS 131.125(2) reasonably may be read to apply when there has been a report of abuse to a governmental agency that itself has the obligation to report. According to defendant, such an interpretation would not render any portions of the statute redundant and would not lead to any absurd results.

Defendant is correct that his alternative proposed interpretation of the statute avoids the pitfalls that the others advanced by the parties do not. Nevertheless, it is not a perfect fit either. The statute simply does not say "other governmental agencies *that have an obligation to report*" incidents of child abuse.

Because an examination of the text of ORS 131.125(2) in its context does not demonstrate conclusively a correct interpretation, and because none of the interpretations advanced by the parties is "wholly implausible," *see Owens v. MVD*, 319 Or 259, 268, 875 P2d 463 (1994) (resort to legislative history is necessary unless alternative interpretations are "wholly implausible"), we proceed to an examination of the legislative history.

■ Defendant insists that we must not resort to the legislative history because the state failed to rely on it in making its arguments to the trial court. Defendant misunderstands the nature of the obligation to preserve a claim of error. The state plainly put in issue the proper construction of the statute. That is all that is required. Whether the state made a particular argument in support of its proposed construction at trial is of no moment. Once the construction of the statute is before us, we have an obligation to arrive at the correct construction, regardless of the parties' arguments. *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997); *State v. Smith*, 184 Or App 118, 121-23, 55 P3d 553 (2003).

Before 1989, the statute of limitations for felony offenses other than murder and manslaughter was three

years. ORS 131.125 (1987). In 1989, the legislature amended the statute to lengthen the limitation period to six years for certain felonies, including sexual offenses, involving victims who were younger than 18 years at the time of the offense. ORS 131.125(2) (1989). The purpose of the amendment was to address the fact that "[i]n sexually related offenses, a child may be too young to understand that sexual activity is a reportable offense, too intimidated to report, or simply unable to report outside the family unit." Staff Measure Summary, Judiciary Conference Committee, HB 2431, June 28, 1989.

In 1991, the Governor's Task Force on Sex Offenses against Children proposed amending the statute of limitations again, this time to extend further the limitation period. Introduced as House Bill (HB) 2411, the bill originally provided for a six-year limitation period, running from the date of the offense, or alternatively, if the victim was under the age of 18 at the time of the offense, "any time before the victim attains 24 years of age." HB 2411, § 2 (A-Engrossed). The justification for the extended limitation period was that "[d]uring hearings of the Governor's Task Force on Sex Offenses against Children, we repeatedly heard testimony that while the improvement was appreciated, it did not go far enough." Testimony, House Judiciary Subcommittee on Family, HB 2411, Jan 30, 1991, Ex C (statement of John L. Collins, Member, Governor's Task Force, Sex Offenses against Children).

When the bill reached the Senate, the Judiciary Committee considered an amendment to shorten the limitation period somewhat. Senator Shoemaker apparently had asked about the practices of other states on this issue. A committee work group examined the issue and reported back to the committee with a proposed amendment. Drawing on statutory phrasing from an existing Florida statute,[3] the work group proposed that the statute of limitations period not extend to the victim's twenty-fourth birthday, but instead

---

[3] Florida law provides that, if the victim of any of a list of sex offenses is under the age of 18, "the applicable period of limitation, if any, does not begin to run until the victim has reached the age of 18 or the violation is reported to a law enforcement agency or other governmental agency, whichever occurs earlier." Fla Stat § 775.15(7)(a).

*either* to the victim's twenty-fourth birthday or to a six-year period from the date on which the offense "is reported to a law enforcement agency or other governmental agency, whichever occurs first." HB 2411, § 2 (B-Engrossed). The Committee Counsel explained the proposal in the following terms:

> "This would extend the statute of limitations for certain felony and misdemeanor sex offenses. The felony offenses, the prosecution could be brought up to six years after the commission of the offense by an adult or a juvenile. If the offense occurred when the victim was a juvenile, it could be brought up to the time that the juvenile was 24, in other words, up to six years after the time the juvenile reached the age of 18. * * *

> "Senator Shoemaker, at the time of the last hearing, had inquired what the practice in other states was with respect to the statute of limitations in these cases, and I had provided two members a summary which was provided to us. It was prepared by the American Prosecutors Research Institute, and it sets forth the statute of limitations in certain sex offenses in other jurisdictions. And in four of the jurisdictions which have statutes similar to what this bill would do, they make another provision for circumstances where the victim reports the incident to police, so that the statute would begin to run either when the victim turned 18, the six-year statute, or *when the victim reported that incident to the police or to an appropriate law enforcement person, whichever occurred sooner.* So the amendments * * * accomplish that change."

Tape Recording, Senate Committee on Judiciary, HB 2411, June 10, 1991, Tape 221, Side B (statement of Ingrid Swenson, Committee Counsel) (emphasis added). The amendment was adopted unanimously.

Staff prepared a measure summary, which described the effect of the amended bill as extending the statute of limitations for certain offenses involving child victims to "any time before the victim reaches the stated age or within the period of limitations for adults after a report is made to a governmental agency." Staff Measure Summary, Senate Committee on Judiciary, HB 2411 (undated).

On the floor of the Senate, Senator Hamby carried the bill and explained its provisions, as amended:

"House Bill 2411A extends the statute of limitations for certain felony and misdemeanor sexual offenses. With felony offenses, the prosecution could be brought up to six years after the commission of the offense for adults and, for victims under 18 years of age, at any time prior to the victim's 24th birthday or within six years after the offense was reported to a law enforcement or other government agency. For affected misdemeanors, a prosecution could be commenced up to four years after the commission of the crime; for victims 18 and under, by the victim's 22nd birthday or within four years after the offense was reported, whichever is earlier.

"* * * * *

"The Senate Judiciary [Committee] * * * added the provision requiring, in cases involving juvenile victims, [prosecution] to be brought within six years and four years respectively for felonies and misdemeanors *reported to any government agencies*."

Tape Recording, Senate Floor Debate, HB 2411, June 22, 1991, Tape 183, Side A (statement of Sen Jeannette Hamby) (emphasis added). The Senate passed the bill without further discussion, and the House concurred in the amendments.

Reading the tea leaves of legislative history always is risky business. But this much may be said of the history of HB 2411 with some confidence: The legislature did not address the specific issue that is before us in this case. The meaning of the phrase "law enforcement agency or other governmental agency" simply did not surface as a topic of discussion.

The state nevertheless seizes upon a passing reference in the statement of counsel for the Judiciary Committee, who referred to the six-year limitation period as running from the date the victim reports "to the police or to an appropriate law enforcement person." According to the state, given that statement, "there can be little doubt" that by "other governmental agency," the legislature meant other law enforcement agencies charged with the responsibility for conducting investigations of child abuse, *viz.*, DHS.

Whether a single statement of a nonlegislator can be as dispositive as the state suggests is, at best, debatable. *See,*

*e.g.*, *State v. Guzek*, 322 Or 245, 260-61, 906 P2d 272 (1995) (single statement of nonlegislator "say[s] little about the intent of the Oregon Legislative Assembly as a whole"). Moreover—and, more importantly—the statement is not uncontradicted in the legislative history. As we have noted, Senator Hamby described the effect of HB 2411 in different terms, declaring that the statute begins to run upon a report "to *any* government agencies," not just law enforcement agencies charged with investigating allegations of child abuse.

We conclude that the legislative history is inconclusive with respect to what the legislature intended by the reference in ORS 131.125(2) to reports to a "law enforcement agency or other governmental agency." We therefore proceed to the final level of analysis, which involves resolving the ambiguity by reference to appropriate maxims of statutory construction.

■ One maxim that the courts frequently invoke is the obligation to attempt to do what the legislature would have done had it addressed the particular dispute at issue. *PGE*, 317 Or at 612 (where text and legislative history do not resolve ambiguity, "the court will attempt to determine how the legislature would have intended the statute to be applied had it considered the issue"). In attempting to determine what the legislature would have intended, we are also permitted to assume that the legislature would not have intended that its enactment produce absurd results. *Vasquez-Rubio*, 323 Or at 282-83 (where text and legislative history are inconclusive, "the court will refuse to adopt the meaning that would lead to an absurd result that is inconsistent with the apparent policy of the legislation as a whole").

In this case, defendant's suggestion that we should read ORS 131.125(2) so that the statute begins to run when there is a report of abuse to *any* government agency may quickly be disposed of as contrary to the assumption that the legislature did not intend a construction that would lead to absurd results. As we have noted, under that proposed construction, the statute of limitations would begin to run on offenses involving child victims when there has been a report to, for example, the Department of Geology and Mineral

Industries, the employees of which have no obligation under ORS 419B.010 to do anything with the reported information. We can identify no public policy that would be advanced by such an interpretation, certainly none that reasonably comports with the discussions reflected in the legislative history of the statute.

As for the state's proposed construction, as we have noted, it is unlikely that the legislature used the term "other governmental agency" to refer solely to DHS. Numerous statutes demonstrate that the legislature knows how to say "the Department of Human Services" when that is the agency to which it wishes to refer.

Aside from that, the legislative history makes clear that the general policy of the statute was to give *children* additional time within which to report instances of abuse. The state's proposed reading of the statute of limitations, which would trigger the six-year limitation period only when a report has been made either to a law enforcement agency or DHS, is based on asserted parallels with ORS 419B.010. That statute, however, involves reports that must be filed by private and public officials, not by the child victims themselves. Children, it is fair to assume, are less likely to report instances of abuse to the police or DHS than to others, for example, their teachers or health care providers.

In addition, the state's proposed construction cannot readily be reconciled with the legislature's apparent intention to provide incentives for timely investigation of reports or disclosures—formal or informal—of child abuse. It should be recalled that, in 1991, the legislature rejected the original version of HB 2411, which defined the statute of limitations solely in terms of the date a victim reaches 24 years of age. Instead, the legislature included an alternative of six years from the date of reporting and mandated that the earlier of the two dates controls. It is thus apparent that the legislature wanted to create incentives for timely investigation of reports or disclosures of abuse. Under the state's proposed construction, a report to an agency or official with an obligation immediately to pass along the information does not trigger the statute of limitations until the agency or official actually does

so. In other words, in cases in which an agency or official subject to an obligation under ORS 419B.010 to report child abuse does not comply with that statutory obligation, ORS 131.125(2) is tolled. We find nothing in the wording or the history of ORS 131.125(2) to support that result.

That leaves defendant's alternative interpretation, that "other governmental agency" refers to those agencies that have an obligation under ORS 419B.010 to pass along the information to appropriate investigative authorities.[4] As we have noted, like the other proposed interpretations, that one is not a perfect fit with the statutory phrasing, which does not include the qualifying language. Unlike the others, however, it does avoid the problem of redundancy.

Moreover, as we have noted, the legislature was concerned with *children* failing timely to report instances of abuse. It stands to reason that the legislature most likely was not thinking about reports of abuse solely to law enforcement agencies and DHS.

Finally, defendant's proposed alternative construction does not produce absurd results. It triggers the statute of limitations when a report has been made to an agency that either has investigative responsibility or is required by law to report the information to agencies that do. That result is consistent with the policies reflected in the legislature's deliberations.

■    We therefore conclude that the phrase "other governmental agency" as used in ORS 131.125(2) refers to a governmental agency with an obligation to report instances of child abuse. In this case, it is not disputed that H reported an incident of sodomy to a teacher more than six years from the date of the issuance of the indictment. It also is undisputed that

---

[4] ORS 419B.010 provides that "[a]ny public or private official" who has "reasonable cause" to believe that a child with whom the official has come into contact has suffered abuse must report the abuse to DHS, a designee of DHS, or a law enforcement agency within the county where the official is located at the time of the contact. ORS 419B.005(3) defines "public or private official" to mean, among other things, a "school employee" and an employee of DHS, the State Commission on Children and Families, the Child Care Division of the Employment Department, and the Oregon Youth Authority.

all school employees—including teachers—have an obligation to report such incidents under ORS 419B.010. ORS 419B.005(3)(c). The prosecution therefore was untimely, and the trial court did not err in dismissing the indictment.

Affirmed.