LINDER, J.,
dissenting.
The issue in this case is a narrow one. It is not whether the State Board of Parole and Post-Prison Supervision has general authority to adopt rules to determine whether and when to parole juvenile aggravated murderers. Against an earlier challenge by one of these petitioners, we have already determined that the board has authority to do so. Engweiler v. Board of Parole, 343 Or 536, 548, 175 P3d 408 (2007). We also determined that the board appropriately exercised that authority by promulgating special rules for juvenile aggravated murderers, because the rules that the board promulgated for adult aggravated murderers did not apply. Id. The challenge in these consolidated cases is directed to only one aspect of the procedures that the board has adopted. Specifically, that narrow issue is whether the board was legally obligated, shortly after these juvenile aggravated murderers were sentenced to life imprisonment, to set an actual parole release date for them, or whether the board has authority to choose instead to first determine if the inmate is susceptible to rehabilitation in the foreseeable future, and set a binding release date only if the board decides that the answer is yes.
To resolve that issue, we should first look to the board’s powers and responsibilities, and in particular the extent to which the legislature has delegated to the board the responsibility to decide the policies and procedures for paroling juvenile aggravated murderers. Like other executive branch agencies, the Board of Parole is a creation of the legislature. The board has no general jurisdiction or inherent *632 authority to exercise any particular power of any kind. See Ochoco Const, v. DLCD, 295 Or 422, 426, 667 P2d 499 (1983) (agencies have no inherent power, but only power and authority conferred on them by organic legislation); see generally Sunshine Dairy v. Peterson, 183 Or 305, 326-27, 193 P2d 543 (1948) (in construing statutes, agency power to act must be expressly conferred by legislature). Instead, the board derives its authority from the enabling legislation that mandates the board’s functions and grants the board the powers needed to carry out those functions. See 1000 Friends of Oregon v. LCDC, 301 Or 622, 627, 724 P2d 805 (1986) (unless constitutional provision establishes agency’s function and authority, executive branch agency derives authority principally from the enabling legislation that mandates particular agency’s function and grants it power). Thus, like other executive agencies, the board’s powers and responsibilities are limited to those that the legislature has expressly authorized. The board can exercise implied authority only to the extent that such authority is necessary to effectuate the board’s expressly granted powers. See Ochoco Const., 295 Or at 433-39 (court would not imply agency authority except to effectuate expressly granted power, regardless of policy arguments in favor of such implication); Cabell v. City of Cottage Grove, 170 Or 256, 272, 130 P2d 1013 (1943) (agency authority may be implied as “reasonably and necessarily incident to those expressly granted”); Lee, Inc. v. Pac. Tel. & Tel. Co., 154 Or 272, 279, 59 P2d 683 (1936) (same principle applies to executive branch officials).[1]
Those principles are fundamental to resolving the issue before us. As we have previously held, the power to parole an inmate does not inhere in the courts, the governor, or any executive branch agency. See generally Anderson v. Alexander, 191 Or 409, 420-28, 229 P2d 633 (1951) (discussing parole power generally; citing authorities with approval). Instead, it is for the legislature to decide whether *633 any particular group or class of inmates is eligible for parole before the expiration of their court-imposed sentences and, if so, which branch of government will be responsible for making their parole decisions and on what terms. Id. Any examination of the board’s authority in this case, consequently, should begin with the enabling legislation that confers authority on the board to parole juvenile aggravated murderers.
Identifying that authority is not, however, a straightforward exercise. As I will outline, only one statute serves as the potential source for the board’s power to parole any aggravated murderer, adult or juvenile. That statute is ORS 144.110(2)(b), which provides that the board may not parole any person convicted of aggravated murder, except pursuant to ORS 163.105. As the majority concludes, not all of the procedural requirements of ORS 163.105 fit the circumstances of juveniles convicted of aggravated murder. That conclusion, however, means only one thing: the board is required by that statutory scheme to apply the procedural requirements of the statute to the degree possible. If none apply, then the board has the authority to adopt appropriate procedures, and the legislature has not confined the board’s authority to do so. That conclusion does not mean, as the majority concludes, that ORS 144.110(2)(b) and the procedural requirements of ORS 163.105 are inapplicable to juvenile aggravated murderers. Any such conclusion would require us to hold, as I will explain, that the board lacks authority to parole juvenile aggravated murderers at all, because no other statute gives the board such authority.
To provide some context for that analysis, it is helpful to briefly examine the board’s parole authority more generally, from past to present.[2] The board’s power to grant parole, and to adopt the policies and procedures for doing so, is of relatively recent vintage. That power did not reside in the board until approximately 1939. Before then, although a *634 state parole board existed, the power to parole persons committed to the custody of the state prison system resided only in the governor and in the court that had sentenced an inmate. See generally Anderson, 191 Or at 420-21 (describing former scheme).[3] The board’s role in granting parole was investigatory and advisory — it provided information pertinent to the decision, and it could initiate a parole decision by recommending that the governor parole an inmate. Id.; see also Fehl v. Martin, 155 Or 455, 455-56, 64 P2d 631 (1937) (quoting then-effective statutes providing for governor’s power to parole inmates on governor’s motion, or on recommendation of parole board). The board, however, had no parole power of its own.
The legislature dramatically changed that structure in 1939 when it created a statewide parole and probation system. See generally Or Laws 1939, ch 266 (creating state parole and probation system). With that change, the legislature vested authority in the parole board to make parole release decisions and simultaneously divested sentencing courts and the governor of that parole power. See generally Anderson, 191 Or at 420-21 (describing the legislative changes). In doing so, the legislature gave the board broad general authority both to make parole release decisions and to promulgate rules governing those decisions.[4] Eventually, the board’s general parole power was codified in ORS 144.050. For 30 years, that statute changed little, except to alter the board’s parole authority over inmates confined in county jails. Compare, e.g., ORS 144.050 (1971) (board authorized to parole inmates confined in any county jail for six months or more) with ORS 144.050 (1987) (no board authority to parole county jail inmates). As to inmates committed to state penal institutions, the board’s authority *635 remained constant during that time: Subject to other applicable laws, the board had the power to parole “any” inmate committed to the custody of the Department of Corrections and “to establish rules applicable to parole.” ORS 144.050 (1987).
In 1989, however, the board’s authority again underwent dramatic change. That year, the legislature adopted the so-called “sentencing guidelines” system, which resulted in determinate sentences for most offenders, with no eligibility for parole. See generally State ex rel Engweiler v. Cook, 340 Or 373, 380-82, 133 P3d 904 (2006) (discussing former parole matrix system and current sentencing guidelines scheme). In accord with that change, the legislature amended ORS 144.050 to limit the board’s parole release authority to persons who had committed a crime before November 1, 1989:
“Subject to applicable laws, the State Board of Parole and Post-Prison Supervision may authorize any inmate, who is committed to the legal and physical custody of the Department of Corrections for an offense committed prior to November 1, 1989, to go upon parole subject to being arrested and detained under written order of the board or as provided in ORS 144.350. The state board may establish rules applicable to parole.”
ORS 144.050 (1989) (emphasis added). Beginning with that amendment, and continuing to today, the board has no general power to parole any inmate whose crime of conviction was committed on or after November 1, 1989. For inmates that the board may parole, however, the board retains broad rulemaking authority to establish policies and procedures for its parole release decisions.
If there were no other source of board authority to release any group or class of inmates on parole, this case would end with that statute. The conclusion would have to be that, assuming that the legislature intended juvenile aggravated murderers to be eligible for parole, and thus to not necessarily serve their entire life sentence, the legislature had not yet provided for any entity to exercise parole release authority as to that class of offenders.
But one other relevant statute does exist: ORS 144.110(2)(b). It provides, as it has since 1977, that the board *636 “shall not release a prisoner on parole who has been convicted of murder defined as aggravated murder * * * except as provided in ORS 163.105.” When the legislature enacted that statute, it was a restriction on the broad parole authority granted to the board under ORS 144.050. Now, with the retraction of parole release authority for any crime committed after November 1, 1989, ORS 144.110(2)(b) stands as the only statute that authorizes the board — albeit in indirect terms — to parole anyone, adult or juvenile, convicted of aggravated murder, regardless of the date of the offense. In that regard, ORS 144.110(2)(b) is both prohibition and authorization. Expressly, it declares that the board “shall not release” an inmate convicted of aggravated murder “except as provided in ORS 163.105.” Under the terms of that statute, then, a person convicted of aggravated murder can be released on parole pursuant to ORS 163.105 or not at all.[5]
The majority goes through the terms of ORS 163.105 at some length, analyzing, correctly, that many of its terms do not, and cannot, apply to juveniles, because juveniles are not subject to mandatory minimum sentences under ORS 161.620.[6] The majority’s observations about the procedural aspects of ORS 163.105 that do not fit the circumstances of *637 juvenile aggravated murderers are not wrong. But the majority’s conclusion that ORS 144.110(2)(b) and ORS 163.105 therefore have no application to juvenile aggravated murderers proves too much. If those statutes do not apply, then the board lacks the necessary legislative grant of authority to make parole release decisions for that class of offender. There simply is no statute conferring authority on the board to release juvenile aggravated murderers on any other terms, and the board is not an entity that has inherent power of any kind.
I do not, however, agree that the misfit between the terms of ORS 163.105 and the circumstances of juvenile aggravated murderers renders that statute wholly without force or effect as to that class of offenders. Instead, on that point, I agree with the Court of Appeals:
“We agree with relator that the fit between all the relevant statutes is not a comfortable one. See Engweiler IV, 343 Or [536,] 543, 543 n 7, [175 P3d 408 (2007)] (noting that, ‘at least at first blush,’ the 1989 versions of ORS 144.110(2)(b), ORS 163.105(1), and ORS 161.620 were ‘potentially inconsistent’). Nevertheless, we conclude that he too quickly seizes on apparent tensions between the statutes in reaching the conclusion that they irreconcilably conflict, ignoring the obligation of the courts to search for a construction that gives effect to all relevant provisions. See ORS 174.010 (‘where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all’); Liles v. Damon Corp., 345 Or 420, 424, 198 P.3d 926 (2008) (noting obligation of the courts ‘to give meaning to all parts of those statutes’ in issue). Such a harmonizing construction is possible; the key, in our view, is discerning the difference between the authority of a court to impose a sentence and the authority of the board to implement it.
“As we have noted, ORS 161.620 (1989) precluded the ‘imposition’ on juvenile aggravated murderers of a 30-year ‘mandatory minimum sentence,’ that is, a 30-year term of confinement without possibility of parole as provided in ORS 163.105(1)(c). Ordinarily, the terms ‘imposition’ and ‘mandatory minimum sentence’ refer to those aspects of a criminal offender’s sanction that are effectuated by a sentencing court, as opposed to those aspects of the sanction— *638 such as parole release — that are implemented by an administrative agency such as the board. See Engweiler IV, 343 Or at 552-53 (explaining that the phrase ‘mandatory minimum sentence’ in ORS 161.620 (1989) ‘mean[s] a minimum period of incarceration that a trial court, by statute, is required to impose as part of an offender’s sentence’ (citing State v. Jones, 315 Or 225, 844 P2d 188 (1992))); see also Gaynor v. Board of Parole, 165 Or App 609, 614-15, 996 P2d 1020 (2000) (distinguishing between authority of sentencing court to impose sentence and authority of Board of Parole and Post-Prison Supervision under ORS chapter 144 to implement sentence).
“ORS 163.105 (1989) itself expressly recognizes that distinction by prohibiting the board and DOC from paroling or releasing (for example, on work release or other forms of temporary leave) an offender sentenced by a trial court to life without possibility of parole, ORS 163.105(1)(b), and by conferring on the board the authority to carry out procedures applicable to persons sentenced to life with the possibility of parole. Indeed, in Engweiler IV, in answering a certified question from the federal district court — whether the 1989 versions of ORS 144.110(2)(b), ORS 163.105(1), and ORS 161.620 ‘combined to create a situation in which certain juveniles * * * convicted of aggravated murder were not entitled to the possibility of parole,’ 343 Or at 543 (footnote omitted) — the Supreme Court limited its analysis entirely to the effect of ORS 161.620 (1989) on subsection (1) of ORS 163.105 (1989) and did not so much as mention any other subsections of the latter statute.
“Thus, when ORS 161.620 (1989) stated that ‘the sentence imposed’ upon a juvenile convicted of aggravated murder may not include any mandatory minimum sentence, that directive precluded a sentencing court from imposing an aspect of the sentence set out in subsection (1)(c) of ORS 163.105 (1989). It said nothing, however, about the authority of the board to implement the remaining portions of the statute concerning release decisions, as set out in ORS 163.105(2) to (4) (1989). Cf. State v. Walker, 192 Or App 535, 547, 86 P3d 690, rev den, 337 Or 327 (2004) (where numerous statutes demonstrated that the legislature knew how to refer to a particular administrative agency, the fact that it did not do so in the statute at issue made it unlikely that it intended the latter statute to encompass that agency). In other words, merely because a *639 court may not impose a particular sentence mentioned in ORS 163.105(1) does not necessarily require the conclusion that the hoard does not remain subject to the requirements of the balance of the statute with respect to juvenile aggravated murderers.”
State ex rel Engweiler v. Powers, 232 Or App 214, 225-27, 221 P3d 818 (2009) (footnote omitted) (emphasis in original).
In short, the inconsistencies that exist between the procedures required by ORS 163.105 and the circumstances of juvenile aggravated murderers can be reconciled, and should be. Any other conclusion leaves the parole board powerless to exercise parole release authority as to that class of offender, because the legislature has not conferred that authority on the board, and because ORS 144.050 and ORS 144.110(2)(b) expressly would prohibit the exercise of release authority on any other terms.
For that reason, the board not only was authorized to promulgate the rules that petitioner challenges, it arguably was obligated to do so. Under those rules, the board holds a prison term hearing at which it determines a future date (no fewer than 20 years of incarceration) to review the juvenile offender’s suitability for eventual parole; the board does not, at that initial hearing, set a binding parole release date.[7] OAR 255-032-0005(4) (1999) (provision for “prison term hearing”); OAR 255-032-0011(2) (1999) (board may set review date rather than projected release date at prison term hearing, or may deny parole). At the future review, the board considers the inmate’s institutional conduct and rehabilitation efforts, after which the board may establish a parole release date or may set another review date, at which it will further review the inmate’s conduct and rehabilitation efforts. OAR 255-032-011 (6)-(7) (1999). Those rules, and the procedures they require, are entirely consonant with those procedures of ORS 163.105 that have application to juvenile aggravated murderers serving life sentences. Even if the board was not obligated to promulgate those rules to best effectuate the *640 terms of ORS 163.105, at the least, the board was entitled to exercise its broad rule-making authority under ORS 144.050 to adopt those policies. Nothing in the statutory scheme precludes the board from exercising its rulemaking discretion in that way.[8]
Because the board’s only authority to parole any person convicted of aggravated murder (including a juvenile) arises under ORS 144.110(2)(b), which incorporates the procedural requirements of ORS 163.105, the board was not obligated to set a release date for petitioners shortly after they began serving their life sentences. Instead, either because those statutes require the board to do so, or because the board has discretion to do so in the exercise of its broad parole rule-making authority, the board was authorized to adopt a procedure whereby it first sets a future date to review the inmate’s conduct and rehabilitation efforts, and based on that review, sets a parole release date only after determining that the inmate is susceptible to rehabilitation. Consequently, in resolving the rule challenge brought by petitioner Sopher, I would conclude that the rules are valid. For the mandamus cases brought by relators Engweiler and Sopher, I would affirm the decisions of the Court of Appeals vacating the peremptory writ issued by the circuit court and remanding for dismissal of the relators’ petitions.
For the above reasons, I dissent.
Kistler, J., joins in this dissent.

 This court has applied essentially the same general principle — that an agency may exercise only expressly granted authority and any powers necessarily incident to that power — to the board. See Severy v. Board of Parole, 318 Or 172, 176 n 7, 864 P2d 368 (1993) (where relevant statutes did not confer authority on board to take particular action, board could not confer such authority on itself through rulemaking).

 Throughout much of its history, the board was denominated the State Board of Parole and Probation, rather than the State Board of Parole and Post-Prison Supervision. See, e.g., ORS 144.010 (1959) (creating board of five members). References to the hoard in this opinion include the board as it has been variously denominated over the years.

 E.g., OCLA 26-1230 (providing that all courts “shall have the power * * * to parole persons convicted” of crimes); OCLA 26-2301 (creating parole board); OCLA 26-2304 (empowering board to supervise persons placed on parole, to make investigations, and to prepare a case history record to determine if they should be paroled).

 Although the board’s authority to determine parole policy and procedures was all hut plenary for those inmates eligible for parole, many inmates were categorically ineligible for parole on any terms. They included habitual offenders and inmates serving a life sentence. See 21 Op Atty Gen 90,92-93 (1942) (citing and discussing exclusions from board’s parole authority).

 The majority expresses its disagreement with this analysis in a footnote. See 350 Or at 615-16 n 14. As part of its response, the majority asserts that ORS 144.110(2)(b) and ORS 163.105, in combination, are not a grant of authority to parole aggravated murders, but are instead a restriction on that authority. I agree, as I acknowledge above, that those statutes are not the most satisfying source of authority to parole aggravated murderers, because of the indirect manner in which that grant of authority is expressed. But if ORS 144.110(2)(b) and ORS 163.105 are not such a grant, then there is none. The only statute that the majority points to as filling the void is ORS 144.050, which by its terms unambiguously grants the board authority to parole only those inmates whose crimes were committed before November 1, 1989. The majority reasons that the date limitation does not apply to aggravated murderers, because of a 1989 legislative “note” to ORS 144.110, which declared that certain statutes continue to apply to aggravated murderers. The cross-referenced statutes (which are all procedural in nature) do not include ORS 144.050. Thus, the majority’s strained conclusion that the note somehow “effectively operates” to create “an exception to the date limitation in ORS 144.050” (350 Or at 615-16 n 14) contradicts not only the express terms of ORS 144.050, but also those of the very provision on which the majority relies.

 Worth noting is that the legislature that enacted ORS 144.110(2)(b) would have intended it to apply equally to adults and juveniles convicted of aggravated murder. ORS 161.620, which precludes imposition of a life sentence without possibility of parole or mandatory minimum sentence on a juvenile offender tried as an adult, was not enacted until 1985.

 When the board sets an actual release date, it is legally obligated to release the inmate on that date, subject to limited exceptions. See ORS 144.245 (so providing); Hamel v. Johnson, 330 Or 180, 187, 998 P2d 661 (2000) (inmate who does not have an unexpired minimum term must be released on the scheduled release date).

 The majority never grapples with this fundamental point about the statutory scheme. Much of the majority’s analysis is devoted to why ORS 144.110(2)(b) and ORS 163.105 do not apply to juvenile aggravated murderers. I disagree with the majority’s analysis in that regard, for the reasons I have described. But the majority’s analysis is flawed for a second reason — it establishes only that the board is not obligated to follow the procedural dictates of ORS 163.105 to the extent that they can be applied to juveniles. That conclusion does not mean that the board is unable to exercise its broad rule-making authority to the same end. Said another way, ORS 163.105 creates a duty for the board to make parole decisions in a particular way, one that limits the board’s otherwise broad authority to make rules for parole decisions. Removing that duty, and thus that limitation, means only that the board’s authority is unconstrained by the legislative policies that are in place for adult aggravated murderers. It does not mean that the board lacks authority to adopt parallel policies for juvenile aggravated murders sentenced to life imprisonment.