Argued and submitted January 30, vacated and remanded for findings
April 24, petition for review denied July 29, 2003
(335 Or 578)

STATE OF OREGON,
*Respondent,*

*v.*

JOHN DAILY BROOKS, JR.,
*Appellant.*

20-00-21068; A113835

67 P3d 426

Susan F. Drake, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E.

Groom, Acting Executive Director, Office of Public Defense Services.

Laura S. Anderson, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

**HASELTON, P. J.**

Defendant appeals from a judgment committing him to the jurisdiction of the Psychiatric Security Review Board (PSRB) for a term of 31 years. That term represented the total of six consecutive five-year terms and one consecutive one-year term for crimes for which defendant was found guilty except for insanity. Defendant argues that, under ORS 161.327(1), the trial court erred in "stacking" his terms of commitment and, particularly, that his commitment could not exceed a total of five years, the "maximum sentence provided by statute" for any one of the felonies for which he was found guilty except for insanity. Alternatively, defendant argues that, even if the trial court could impose consecutive sentences, it was required to make findings in support of those consecutive commitments, and it failed to do so. As explained below, we reject defendant's first argument but generally agree with his second argument. We therefore remand to give the trial court an opportunity to make the findings necessary to support the imposition of consecutive commitment terms.

The material facts are undisputed. Defendant was charged with six counts of unlawful use of a weapon, ORS 166.220, first-degree criminal mischief, ORS 164.365, and failure to perform the duties of a driver when property is damaged, ORS 811.700. Defendant was found guilty except for insanity on all of those offenses after a trial on stipulated facts. The trial court determined that, pursuant to ORS 161.327, defendant would be placed under the supervision of PSRB for a period of 31 years. The trial court reasoned that defendant could receive consecutive five-year commitment terms for five of the six counts of unlawful use of a weapon[1] and for first-degree criminal mischief, *see* ORS 161.605 (maximum term of imprisonment for Class C felony is five years), and an additional one-year commitment for the misdemeanor, failure to perform the duties of a driver, *see* ORS

---

[1] The sixth count of unlawful use of a weapon simply stated an alternative theory for the same act alleged in another count. The state acknowledged that those two counts should merge.

161.615 (maximum term of imprisonment for Class A misdemeanor is one year). The trial court declined to make specific findings that would have authorized the imposition of consecutive sentences pursuant to ORS 137.123, reasoning that ORS 161.327 did not require such findings.

On appeal, defendant challenges the imposition of consecutive commitment terms. The state responds that we sustained the imposition of consecutive PSRB commitments under a previous version of ORS 161.327 and that subsequent changes in that statute were not intended to alter a court's authority in that regard. In response to defendant's alternative argument, the state argues that, even if findings paralleling those under ORS 137.123 are necessary to support the imposition of consecutive terms of commitment, a remand is unnecessary because, on this record, we can determine as a matter of law that consecutive commitment terms were required.

■     We first consider when, if ever, consecutive PSRB commitment terms can be imposed when a defendant is found to be guilty except for insanity. ORS 161.295(1) provides:

> "A person is guilty except for insanity if, as a result of mental disease or defect at the time of engaging in criminal conduct, the person lacks substantial capacity either to appreciate the criminality of the conduct or to conform the conduct to the requirements of law."

Whether a person meets that standard is a question of fact to be determined by the jury or, in a bench trial, by the court. ORS 161.313. If the factfinder finds the defendant guilty except for insanity pursuant to ORS 161.295, the court must enter a judgment accordingly. ORS 161.319; ORS 161.325. After entry of a judgment of guilty except for insanity, the court must determine whether the person must be immediately discharged from custody pursuant to ORS 161.329[2] or

---

[2] ORS 161.329 states:

"Following the entry of a judgment pursuant to ORS 161.319 and the dispositional determination under ORS 161.325, if the court finds that the person is no longer affected by mental disease or defect, or, if so affected, no longer presents a substantial danger to others and is not in need of care, supervision or treatment, the court shall order the person discharged from custody."

committed to PSRB's jurisdiction pursuant to ORS 161.327. *See* ORS 161.325(1).

Finally, ORS 161.327(1), which lies at the heart of the parties' dispute, states:

> "Following the entry of a judgment pursuant to ORS 161.319 and the dispositional determination under ORS 161.325, if the court finds that the person would have been guilty of a felony, or of a misdemeanor during a criminal episode in the course of which the person caused physical injury or risk of physical injury to another, and if the court finds by a preponderance of the evidence that the person is affected by mental disease or defect and presents a substantial danger to others requiring commitment to a state mental hospital designated by the Department of Human Services or conditional release, the court shall order the person placed under the jurisdiction of the Psychiatric Security Review Board for care and treatment. *The period of jurisdiction of the board shall be equal to the maximum sentence provided by statute for the crime for which the person was found guilty except for insanity.*"[3]

(Emphasis added.)

The parties focus, at least initially, on the emphasized language—and, particularly, on the phrase "the maximum sentence provided by statute for the crime for which the person was found guilty except for insanity." Defendant seizes on the term "the crime" and argues that the use of the definite article demonstrates that the legislature intended to limit the term of PSRB jurisdiction to the maximum sentence that a defendant could have received for the most serious of the committed person's crimes—here, five years for a Class C felony. Defendant further contends that the use of the singular "crime," as opposed to "crimes," evinces the legislative intent not to authorize the imposition of consecutive, or even concurrent, terms. The state counters that, when viewed in context, the use of the term "the crime" does not purport to

---

[3] Under ORS 161.326(1), a party who commits a new crime while under PSRB's jurisdiction may be subject to a further term of commitment. In that circumstance, PSRB is to make the findings described in ORS 161.325(2). ORS 161.325(2), in turn, requires a determination of "the offense of which the person otherwise would have been convicted" and findings as to the identity of any victims and whether any victim wishes to receive notification pertaining to defendant's status.

preclude the imposition of consecutive terms—and, rather, that the statute has historically authorized the imposition of consecutive PSRB terms and continues to do so.

We acknowledge at the outset that the text of the current version of the statute, when viewed in isolation, appears to support defendant, at least insofar as it does not affirmatively indicate that consecutive commitment terms *may* be imposed. However, at the first level of the *PGE* analysis, we do not merely consider text; rather, we are to consider the text in context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). Context includes previous versions of the statute, as well as judicial interpretations of previous versions of a statute. *Id.* Context also includes related statutes and prior enactments of those statutes. *Young v. State of Oregon*, 161 Or App 32, 35-36, 983 P2d 1044, *rev den*, 329 Or 447 (1999).

Although the insanity defense itself evolved from English common law, the disposition of those who success-fully assert such a defense under Oregon law appears to have been based solely on statutory law rather than common law. Oregon's first law concerning the insanity defense was enacted in 1864, shortly after Oregon became a state. It pro-vided that, if a person was found not guilty by reason of insanity, and the court deemed the person "dangerous to the public peace or safety," the court was "to order him commit-ted to any lunatic asylum." Such a commitment was to con-tinue "until he becomes sane, or otherwise discharged there-from by authority of law." General Laws of Oregon, Crim Code, ch XVII, § 170, p 469 (Deady 1845-1864). The law in that respect remained essentially unchanged until the crea-tion of the PSRB in 1977. *See generally Strecker v. PSRB*, 154 Or App 130, 960 P2d 893, *rev den*, 328 Or 41 (1998) (discuss-ing pre-1977 law on the subject).[4]

---

[4] In *Strecker*, the petitioner successfully asserted an insanity defense concern-ing crimes arising out of the same criminal episode and was committed to the state mental hospital for an indeterminate period of time before the creation of PSRB. 154 Or App at 132. The act that created PSRB gave it jurisdiction over people who had been committed to state mental hospitals under circumstances such as those of the petitioner. PSRB then promulgated a rule concerning the length of commit-ment for those committed to its jurisdiction for crimes committed before PSRB's creation, that stated in pertinent part: "The period of jurisdiction in these cases shall be equal to the maximum sentence the person could have received if found

In 1977, in creating the PSRB, the legislature enacted the direct statutory antecedent of the present ORS 161.327(1). Oregon Laws 1977, chapter 380, section 11(1) provided, in part:

> "Following the entry of a judgment pursuant to ORS 161.319, if the court finds by a preponderance of the evidence that the person is affected by mental disease or defect and that he presents a substantial danger to himself or others that requires that the person be committed to a state mental hospital designated by the Mental Health Division or conditionally released, the court shall order him placed under the jurisdiction of the Psychiatric Security Review Board for care and treatment. *The period of jurisdiction of the board shall be equal to the maximum sentence the court finds the person could have received had he been found responsible.*"

(Emphasis added.) That language remained substantially the same until 1989.[5]

In *State v. Norman*, 71 Or App 389, 692 P2d 665 (1984), *rev den*, 299 Or 31, *cert den*, 471 US 1020 (1985), we interpreted that pre-1989 "maximum sentence * * * the person could have received" language. We concluded that "maximum sentence," as used in ORS 161.327(1), was the maximum aggregated consecutive sentences that could have been imposed for multiple offenses. In *Norman*, the defendant was committed to the jurisdiction of PSRB for a period of 10 years based on two offenses, each of which carried a statutory maximum sentence of five years. The trial court determined that it had no discretion and was required to commit the defendant for the 10-year period, even though it would not have been required to impose consecutive *sentences* for those crimes. *Id.* at 391. We affirmed, noting that, at the time the

guilty and shall be measured from the date of judgment." *Id.* at 133, *quoting* OAR 859-30-010(3). Under that rule, PSRB determined that the petitioner could have received a maximum term of imprisonment of 40 years for the rape and sodomy offenses because those offenses could have been sentenced consecutively. On review, we rejected the petitioner's argument that PSRB could not make the determination that sentences could have been consecutive. *Id.* at 134.

[5] In 1987, the pertinent language read, "The period of jurisdiction of the board shall be equal to the maximum sentence the court finds the person could have received had the person been found guilty not subject to exception for insanity." ORS 161.327(1) (1987).

defendant's crimes had occurred, courts had inherent powers to make sentences consecutive or concurrent to one another. *Id.* at 392-93. We reasoned that, because a court, in exercising that inherent authority, *could* have imposed consecutive sentences, the "maximum sentence" that the defendant "could have received" was the total consecutive amount of 10 years. *Id.*; *see also Strecker*, 154 Or App at 133 (reaching a similar conclusion in the context of a challenge to a PSRB administrative rule).

In 1989, the legislature amended the key language of ORS 161.327(1) as follows:

> "The period of jurisdiction of the board shall be equal to the maximum sentence [*the court finds the person could have received had the person been found guilty not subject to exception*] **provided by statute for the crime for which the person was found guilty except** for insanity."

Or Laws 1989, ch 790, § 48. The bracketed and italicized language was removed from the statute and replaced by the boldface language.

The 1989 amendment was enacted as part of omnibus legislation, Oregon Laws 1989, chapter 790, designed to implement the newly created state sentencing guidelines. *See generally State v. Ferman-Velasco*, 333 Or 422, 430, 41 P3d 404 (2002). The only changes chapter 790 made to the PSRB statutes involved changing the above-quoted language in ORS 161.327, as well as minor changes in ORS 161.336 (concerning conditional release by PSRB) and ORS 161.341 (concerning initial PSRB hearing).

Thus, there is no suggestion from the contextual backdrop of the 1989 amendment that the legislature intended to fundamentally alter Oregon's long-established policy of ensuring that persons found to be "guilty but insane" would be potentially subject to the longest possible period of supervision. Nor is there any suggestion that the 1989 legislature intended to alter the operation of PSRB's jurisdiction so that a person found guilty of multiple offenses except for insanity would, necessarily, be subject to PSRB's jurisdiction

for less time than if he or she had been convicted and criminally sentenced for the same crimes. There is, in sum, no suggestion that the legislature intended to repeal the authorization for imposition of consecutive PSRB terms, as sustained in *Norman. See generally State v. Waterhouse*, 209 Or 424, 426, 307 P2d 327 (1957) (noting maxim of statutory construction that the legislature acted with knowledge "of such existing judicial decisions as have a direct bearing" on an issue).

Defendant does not seriously contend otherwise. Rather, defendant asserts that the operative language "the crime"—is so clear as to be susceptible to only one plausible construction, even when viewed in the context of the statute's evolution and the 1989 amendment's enactment. Defendant's argument is, essentially, "That may not be what the legislature intended, but it is what they said." *Accord Young*, 161 Or App at 37-38 (applying *PGE* methodology).

We disagree. The text of ORS 161.327(1), when read in context with the remaining statutes pertaining to the insanity defense and in context with prior versions of those statutes and case law interpreting them, is ambiguous as to the proper determination of the total term of PSRB commitment. That is so for several reasons.

First, the use of the term "maximum sentence * * * for the crime" does not necessarily, as defendant posits, mean either that PSRB jurisdiction may only be established for one crime or that, if PSRB jurisdiction is established based on multiple crimes, the total PSRB commitment term must be determined by reference to only one of those crimes. Rather, that language does not explicitly address circumstances involving multiple crimes. Thus, far from precluding the imposition of consecutive PSRB terms, the statute might, plausibly, either simply not address the propriety of imposing consecutive terms—or, given the statute's evolution and the context of the 1989 amendment, implicitly confirm and continue preexisting authority.

Second, while defendant's position is necessarily premised on the statute's use of the definite singular—"the crime"—it is equally apparent that, if the statute instead read "crimes," defendant's construction would fail. Indeed, if

ORS 161.327(1) read "the maximum sentence provided by statute for the crimes for which the person was found guilty," it would be substantively indistinguishable from the pre-1989 version. (Underscore added.) In that regard, we note that ORS 174.127(1) states that, in construing Oregon statutes, "[t]he singular number may include the plural and the plural number, the singular." Although that principle is obviously qualified ("may"), it is at least arguably apposite here, where there is no contextual suggestion that the legislature, in using the singular "crime," intended to effectively repeal the existing statutory authorization. That, in turn, renders "maximum sentence * * * for the crime" ambiguous.

The "text-in-context" inquiry is inconclusive. Consequently, we turn to the legislative history. *PGE*, 317 Or at 611.

As noted above, the amendment to ORS 161.327(1) was part of omnibus legislation designed to implement the sentencing guidelines, which changed felony sentencing in Oregon, for the most part, from an indeterminate system to a determinate system. Or Laws 1989, ch 790. The legislative history demonstrates that the change in ORS 161.327(1) was meant to make it clear that the length of PSRB jurisdiction was to be measured by the statutory indeterminate maximum sentence rather than by the guidelines presumptive sentence. Tape Recording, Senate Judiciary Committee, SB 1073, Apr 3, 1989, Tape 91, Side B (statement of Bob Durston, Criminal Justice Council). The change to ORS 161.327(1) was *not* intended to change "the terms of the Psychiatric Security Review Board's custody because of the guidelines." Tape Recording, Senate Judiciary Committee, SB 1073, Jun 6, 1989, Tape 221, Side B (statement of Kathleen Bogan, Criminal Justice Council).

The legislative history thus discloses that, when the legislature changed the wording of ORS 161.327(1) in 1989, it did *not* intend to change how the maximum PSRB commitment term was to be calculated. Rather, the 1989 amendment was intended to preserve the status quo and ensure that the implementation of the sentencing guidelines did not alter how the commitment term was to be calculated. In light of the legislative history, we conclude that the legislature did

not intend to legislatively overrule our holding in *Norman* concerning consecutive commitments to PSRB's jurisdiction. ORS 161.327(1) continues to authorize the imposition of consecutive PSRB terms.

We note, finally, that even if the legislative history were not conclusive, we would reach the same result were we to proceed to the third level of statutory construction and apply general maxims of construction. *See PGE*, 317 Or at 612. We would particularly invoke and apply the maxim that we are to "attempt to determine how the legislature would have intended the statute to be applied had it considered the issue." *Id.*

In that regard, we note that a PSRB commitment under ORS 161.327(1) must be based on a factual finding that a person is affected by a mental disease or defect *and* "presents a substantial danger to others requiring commitment." At any time after that initial determination, if a court or PSRB determines that the person no longer presents a substantial danger to others, the person will be discharged. ORS 161.329; ORS 161.341. Thus, in applying the maxim of construction, we would ask: If the 1989 legislature had considered the matter, would it have intended its amendment to ORS 161.327(1) to dramatically reduce the maximum possible commitment terms of individuals who have successfully asserted an insanity defense as to multiple crimes *and who continue to present a substantial danger to others*? We have no doubt as to the answer.

Before proceeding to defendant's second assignment of error, which challenges the trial court's failure to make findings under ORS 137.123 supporting the imposition of consecutive PSRB terms, we address an intermediate argument that defendant advances—*viz.*, that *Norman* is no longer good law. Our response, in turn, informs our disposition of the second assignment.

Defendant asserts that *Norman* has no continuing vitality because the commitment to PSRB in that case occurred at a time when trial courts had "inherent powers" to make sentences consecutive. Defendant further asserts that, after the enactment of ORS 137.123,[6] which requires a court

---

[6] ORS 137.123 provides, in part:

to make specific findings in support of consecutive sentences under certain circumstances, no such "inherent powers" exist. *See generally State v. Trice*, 146 Or App 15, 21, 933 P2d 345, *rev den*, 325 Or 280 (1997) (with the enactment of ORS 137.123, the legislature curtailed courts' inherent authority to impose consecutive sentences).

■ We agree with defendant that the courts' authority to impose consecutive sentences—or PSRB terms—is now exclusively statutory, not "inherent." To that extent, *Norman* is no longer viable.[7] Indeed, our analysis and disposition in this case are grounded solely in statutory authority. We also agree with defendant—and the state does not dispute—that, given the enactment of ORS 137.123, any imposition of consecutive PSRB terms under ORS 161.327(1) must be supported by findings comporting with ORS 137.123.

As noted above, the trial court in this case declined to make findings pursuant to ORS 137.123 because it concluded that ORS 161.327 did not require such findings. The court erred in that regard: ORS 161.327 requires the court to fix the length of PSRB's jurisdiction by reference to the maximum sentence that a defendant could have received if he or she had been criminally sentenced. That, in turn, requires the court to determine if the defendant could have received

---

"(2) If a defendant is simultaneously sentenced for criminal offenses that do not arise from the same continuous and uninterrupted course of conduct * * * the court may impose a sentence concurrent with or consecutive to the other sentence or sentences.

"* * * * *

"(5) The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury, or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course o[f] conduct."

[7] We emphasize, however, that nothing in the intervening changes in the law called into question *Norman*'s substantive holding—that the total duration of PSRB commitment is to be determined based on the length of consecutive sentences that could have been imposed.

consecutive sentences under the standards prescribed in ORS 137.123.

Thus, to determine the total maximum sentence that can be imposed for multiple offenses for which a person is found guilty except for insanity, the court must first determine if the offenses arose "from the same continuous and uninterrupted course of conduct." ORS 137.123(2), (4). If not, then the maximum possible sentences would be consecutive to one another, ORS 137.123(2), and consecutive PSRB commitment terms must be imposed. If, however, some or all of the offenses arose from a "continuous and uninterrupted course of conduct," then the maximum sentences for those crimes can be imposed consecutively to one another only if the court makes findings pursuant to ORS 137.123(5). If the court is able to make the factual findings necessary under ORS 137.123(5)(a) or (b) with respect to some or all of the offenses, then the PSRB commitment terms for those offenses must be made consecutive. If, however, the court finds that the factual predicates for consecutive sentences under ORS 137.123(5)(a) or (b) are not present, then the PSRB commitment terms stemming from those offenses arising out of a continuous and uninterrupted course of conduct must be concurrent.

Defendant suggests that the trial court's failure to make the necessary findings requires a remand. The state suggests that, regardless of the lack of findings, the trial court, on this record, *could* have made the necessary findings under ORS 137.123 in support of consecutive sentences— and, thus, the trial court's judgment imposing consecutive commitment terms should be affirmed.

We reject the state's suggestion. ORS 137.123 contemplates findings made at the trial court level, not findings by an appellate court. This court does not engage in independent fact finding; nor do we second-guess what a factfinder might have done but did not do. When we encounter problems with factual findings in the context of sentencing, we remand. *See, e.g., State v. Racicot,* 106 Or App 557, 561, 809 P2d 726 (1991) (making necessary determinations under ORS 137.123(5)(a) and (b) "may require the trial court to

choose from competing versions of the facts or to make a qualitative judgment about the relative seriousness of facts or circumstances involved in the commission of a crime" and cannot be done *de novo* on appellate review). We thus conclude that the trial court's failure to make findings necessary to impose consecutive PSRB commitment terms requires a remand.

Vacated and remanded for findings as to whether, under ORS 137.123, trial court could have imposed consecutive sentences for offenses for which defendant was found guilty except for insanity, and for redetermination of the length of defendant's PSRB commitment pursuant to ORS 161.327 in light of those findings.