Argued and submitted February 14, reversed and remanded for reconsideration
November 23, 2005

In the Matter of the Compensation of
Karen M. Godfrey, Claimant.

Karen M. GODFREY,
*Petitioner,*

*v.*

FRED MEYER STORES,
*Respondent.*

03-04253; A124562

124 P3d 621

Robert F. Webber argued the cause for petitioner. With him on the briefs was Black, Chapman, Webber, Stevens & Petersen.

Deborah L. Sather argued the cause for respondent. With her on the brief were Brian M. Perko and Sather, Byerly & Holloway.

Before Landau, Presiding Judge, and Brewer, Chief Judge,* and Armstrong, Judge.

LANDAU, P. J.

Armstrong, J., concurring.

---

* Brewer, C. J., *vice* Richardson, S. J.

**LANDAU, P. J.**

ORS 656.265(1) requires that a worker give an employer notice of an accident resulting in injury or death. At issue in this case is whether a claimant who orally reported an injury to her employer gave the notice that is required by that statute. The Workers' Compensation Board held that she did not. We disagree and therefore reverse and remand for reconsideration.

## I.  FACTUAL BACKGROUND

The relevant facts are not in dispute. On December 22, 2001, claimant orally advised her supervisor that she had injured her wrist at work the day before. The supervisor then entered the following into employer's computerized database under a format labeled "Employee Incident Report":

> "[Claimant] was scanning a 2 liter of soda when she felt a pop or tear and burning sensation in her wrist and lower forearm. She has swelling and bump that is not normal. It feels like a deep ache. If the pain gets worse then she will seek medical attention. It is the right arm."

Employer never printed a paper copy of what claimant had reported.

Claimant did not seek medical treatment for over a year. On February 18, 2003, she filed a Form 801 making a written claim for her injury. Employer denied the claim on the ground that claimant had failed to file timely written notice as required by the applicable statutes. Employer argued that ORS 656.265(1) requires written notice from a worker within 90 days after an accident and permits notice to be filed beyond that period only if the employer had knowledge of the injury and the claimant filed written notice within a year of the accident. In this case, employer argued, claimant did not file written notice until well after the one-year period had expired. Claimant responded that the statute requires only that "notice" be given the employer within a year of the accident and that that notice need not be in writing. The board agreed with employer and upheld the denial.

## II. ANALYSIS

On review, the parties renew their arguments—employer, that the statute requires that notice be given in writing, and claimant, that notice need not be in writing so long as the employer learns the relevant facts. The disposition of the parties' arguments turns on the meaning of the relevant statute, which we ascertain by reference to the interpretive method set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Our task is to ascertain what the legislature that enacted the statute into law intended the wording of the enactment to mean. ORS 174.020. It is not to effect what we, in our independent judgment, believe to be better policy. *See, e.g., Monaco v. U.S. Fidelity & Guar.*, 275 Or 183, 188, 550 P2d 422 (1976) ("This court cannot correct clear and unambiguous language for the legislature so as to better serve what the court feels was, or should have been, the legislature's intent."); *Lindsey v. Farmers Ins. Co.*, 170 Or App 458, 466-67, 12 P3d 571 (2000) ("Our obligation is not to fix statutes[.]"). We ascertain the legislature's intended meaning of the statute first by examining the text of the statute in its context, which includes any prior Supreme Court construction of the statute. *See State v. Reid*, 319 Or 65, 68-69, 872 P2d 416 (1994) (The Supreme Court's construction of a statute "becomes a part of the statute as if written into it at the time of its enactment."). If, after analysis of the text in context, the statute remains ambiguous, we resort to legislative history and, if necessary, other aids to construction. *PGE*, 317 Or at 611-12.

A. *Textual Analysis*

ORS 656.265 provides:

"(1) Notice of an accident resulting in an injury or death shall be given immediately by the worker or a dependent of the worker to the employer, but not later than 90 days after the accident. The employer shall acknowledge forthwith receipt of such notice.

"(2) The notice need not be in any particular form. However, it shall be in writing and shall apprise the employer when and where and how an injury has occurred

to a worker. A report or statement secured from a worker, or from the doctor of the worker and signed by the worker, concerning an accident which may involve a compensable injury shall be considered notice from the worker and the employer shall forthwith furnish the worker a copy of any such report or statement.

"(3)   Notice shall be given to the employer by mail, addressed to the employer at the last-known place of business of the employer, or by personal delivery to the employer or to a foreman or other supervisor of the employer. If for any reason it is not possible to so notify the employer, notice may be given to the Director of the Department of Consumer and Business Services and referred to the insurer or self-insured employer.

"(4)   Failure to give notice as required by this section bars a claim under this chapter unless the notice is given within one year after the date of the accident and:

"(a)   The employer had knowledge of the injury or death; or

"(b)   The worker died within 180 days after the date of the accident.

"* * * * *

"(5)   The issue of failure to give notice must be raised at the first hearing on a claim for compensation in respect to the injury or death.

"(6)   The director shall promulgate and prescribe uniform forms to be used by workers in reporting their injuries to their employers. These forms shall be supplied by all employers to injured workers upon request of the injured worker or some other person on behalf of the worker. The failure of the worker to use a specified form shall not, in itself, defeat the claim of the worker if the worker has complied with the requirement that the claim be presented in writing."

As is not uncommon with frequently amended statutes, the drafting is less than perfect. The text can be taken to suggest different possibilities with respect to whether it requires that the worker provide an employer with written notice of an accident or injury, depending on which portions are given emphasis.

1. *First possibility: Notice must be presented in writing*

A number of provisions of the statute reasonably suggest that the worker must provide written notice to the employer. First, under subsection (1), "[n]otice" must be given "by the worker * * * to the employer." Thus, whatever "notice" may entail, it must be given "by the worker."

Second, subsection (2) provides that, although "[t]he notice need not be in any particular form," it must be in writing. The use of the definite article suggests that "the notice" refers to the notice mentioned in the immediately preceding section; there is no other "notice" at that point in the statute to which the subsection could refer. *See Anderson v. Jensen Racing, Inc.*, 324 Or 570, 578-79, 931 P2d 763 (1997) (the definite article "the" functions as an adjective that denotes a particular, specified thing). Thus, it is reasonable to conclude that "the notice" that "shall be in writing" is the notice that must be given by the worker to the employer.

■ Third, subsection (3) provides that "[n]otice shall be given to the employer by mail * * * or by personal delivery." Once again, although the definite article is not used, "notice" appears to refer to the notice that is mentioned in subsections (1) and (2). That is important, because the reference to the giving of notice "by mail" or "by personal delivery" suggests that the notice—that is, the notice that, under subsections (1) and (2) must be provided "by the worker"—must be in writing. Ordinarily, such phrasing refers to delivery of a writing or some other physical object. *See, e.g., Black's Law Dictionary* 385 (5th ed 1979) (defining "delivery" as "[t]he act by which the res or substance thereof is placed within the actual or constructive possession or control of another"). And, consistently with that ordinary meaning, the legislature has employed the phrase to refer to mail or delivery of a writing. *See, e.g.,* ORS 10.245(2) ("The presiding judge for the judicial district may cause to be mailed or delivered with a juror's summons a juror eligibility form and instructions for completion of the form and return of the completed form by mail or personal delivery to the clerk of court by a specified date."); ORS 18.652(1) ("A writ of garnishment may be delivered to the garnishee personally or by certified mail, return receipt

requested."); ORS 30.275(4), (5) ("Formal notice of a claim is a written communication from a claimant or representative * * * [and] shall be given by mail or personal delivery."); ORS 90.155(1) ("[W]here this chapter requires written notice, service or delivery of that written notice shall be executed by one or more of the following methods: (a) Personal delivery to the landlord or tenant; [or] (b) First class mail to the landlord or tenant[.]"); ORS 105.135(3)(b) ("The process server shall serve the defendant with a true copy of the summons and complaint at the premises by personal delivery to the defendant[.]"); ORS 223.117(2)(c) (a local government ordinance imposing a public works assessment must "[r]equire notice of such proposed assessment to be mailed or personally delivered to the owner of each lot to be assessed"). As a general rule, when the legislature uses the same term throughout the statutes, we assume that the term has the same meaning throughout. *PGE*, 317 Or at 611; *State v. Holloway*, 138 Or App 260, 266-67, 908 P2d 324 (1995) (determination of meaning of "public land" in criminal statute derived from legislature's consistent use of the same term approximately 600 other times in the Oregon Revised Statutes).

Fourth, subsection (6) states that the failure of a worker to use a specified form of notice is not fatal, "if the worker has complied with the requirement that the claim be presented in writing." The statute reflects a requirement that "the claim"—and not the notice of an accident causing injury or death—be presented in writing. Thus, at least on the surface, the provision would appear to suggest nothing about whether the notice must be presented in writing. In *Vsetecka v. Safeway Stores, Inc.*, 337 Or 502, 98 P3d 1116 (2004), however, the Oregon Supreme Court, albeit in *dictum*, referred to that provision as stating a requirement that *the notice* be presented in writing.

In *Vsetecka*, the claimant had noted in the employer's injury log the claimant's name, the date of injury, and a description of the injury as "pain in right wrist." *Id.* at 504. The employer contended that the notice failed to satisfy the statutory requirement of identifying in writing where and how the injury had occurred. *Id.* The court held that providing written notice of when, where, and how an injury

occurred is but one of several different methods that the statute authorizes. The court noted that subsection (2) of the statute offered a second method, namely, the employer securing from the worker a "report or statement" concerning an accident that may involve a compensable injury. That provision, the court observed, did not include a requirement that the notice include information as to when, where, and how the injury occurred. *Id.* The court noted that, in subsection (6), the statute mentioned a third possibility, completing forms that the director has promulgated for the purpose. After summarizing the various possible ways to satisfy the notice requirement, the court concluded with the comment that *"the one constant, which the last sentence in subsection (6) makes clear, is that the notice must be in writing." Id.* at 510 (emphasis added).

■ Precisely why the court said what it did about subsection (6) is not clear. It was not necessary to the disposition of the case before it. There was no issue in *Vsetecka* about whether the notice must be in writing; it was undisputed in that case that the claimant wrote his notice into the employer's injury log. Ordinarily, *dictum*—even Oregon Supreme Court *dictum*—about the construction of a statute has no particular precedential force. *See SAIF v. Allen*, 320 Or 192, 204, 881 P2d 773 (1994) (rule of prior construction does not apply to Supreme Court *dicta*).

That would seem to be particularly appropriate when the *dictum* is difficult to reconcile with the reasoning of the balance of the opinion. *See, e.g., Cutright v. Weyerhauser Co.*, 299 Or 290, 301, 702 P2d 403 (1985) (court declined to rely on *dictum* that was a "questionable pronouncement" as to meaning of earlier workers' compensation statute). In *Vsetecka*, it should be recalled, the court took care to explain that the "when and where and how" requirement applied only to the first method of providing notice to the employer; it does not apply to reports or statements that the employer secures from the worker because the "report or statement" provision omits any reference to such a requirement. 337 Or at 510. By parity of reasoning, the requirement that the notice be in writing would not apply to the "report or statement" provision, because that provision omits any reference to a writing requirement as well. Still, the court said what it

said, and we regard the statement, along with the textual analysis that we have described, as at least plausible support for interpreting the statute to impose a requirement that all forms of notice be in writing.

In short, taken together, subsections (1), (2), (3), and (6) reasonably may be interpreted to impose a requirement that a worker provide notice to the employer of an accident or injury and that the notice that the worker must provide to the employer must be in writing.

### 2. *Second possibility: The "report or statement" alternative*

There is at least one other interpretation of the statute that is plausibly supported by the text of the statute in context. It is possible to read ORS 656.265 as describing three different ways that the notice requirement stated in subsection (1) may be satisfied, only two of which impose a requirement that the notice be in writing.

First, the statute provides that the notice "shall be in writing and shall apprise the employer when and where and how an injury has occurred to a worker." ORS 656.265(2). Second, the statute provides, *as an alternative*, that "[a] report or statement secured from a worker, or from the doctor of the worker and signed by the worker, concerning an accident which may involve a compensable injury shall be considered notice from the worker[.]" *Id*. Third, the statute provides in subsection (6) that the director must prescribe "uniform forms to be used by workers in reporting their injuries to their employers."

The legislature thus took the trouble to describe three different ways to satisfy the notice requirement of subsection (1). And in describing the second of those three different methods of supplying notice, the "report or statement" method, the legislature omitted any express reference to a writing requirement. Certainly, in common parlance, "reports" or "statements" may take either written or oral form. *Webster's Third New Int'l Dictionary* 1925, 2229 (unabridged ed 2002) (defining "report" as, among other things, "something that gives information: usu. detailed account or statement" and defining "statement" as including "the act or

process of stating, reciting, or presenting orally or on paper"). And the legislature commonly uses the terms to refer to both oral and written communications. ORS 17.075, for example, provides that "[a]n employer whose interest is or may become adverse to that of an injured employee shall not, within 15 days from the date of the occurrence causing the employee's injury * * * [o]btain or attempt to obtain *any statement, either written or oral,* from the injured employee." (Emphasis added.); *see also* ORS 36.504 ("delivery of the expert's written or oral report"); ORS 124.065(1) (referring to "oral reports" of elder abuse); ORS 128.891(2) (referring to "[a]ny written or oral statement in connection with a solicitation of contributions"); ORS 419B.020(1) ("oral report of child abuse").

Moreover, the legislature knows how to impose a requirement that notice be presented in writing, as illustrated by the immediately preceding sentence of subsection (2), which provides that the first method of providing notice "shall be in writing." In this case, it did not do so, giving rise to the reasonable inference that it intended that a writing not be required.

What is more, reading "report or statement" to refer only to writings creates the potential for redundancy. If, under the preceding sentence of subsection (2), it is already required that notice take the form of a writing, what is the point of adding a second sentence to the statute, providing that a report or statement secured from the worker "shall be considered notice from the worker"? Ordinarily, we are constrained to construe statutes to avoid such potential redundancies. *See, e.g., State v. Young,* 196 Or App 708, 713, 103 P3d 1180 (2004), *rev den,* 338 Or 583 (2005) ("Well-worn principles of statutory construction counsel us to avoid, if possible, interpretations that render portions of a statute redundant.").

Adding to the persuasive force of the foregoing reading of ORS 656.265 is the fact that it appears to be how the Supreme Court interpreted it in *Vsetecka*. Recall that, in that case, the worker had written in his employer's injury log certain information about an injury, but had omitted a description of precisely how or where the injury occurred. The employer argued that the notice was insufficient, because it

omitted that information, which it argued was plainly required by ORS 656.265(2). The court disagreed. The court reasoned that the "when and where and how" information was necessary only if the worker had elected to give his employer notice by the first of the three different ways that the statute permitted notice to be accomplished. Because the statute described alternate ways of satisfying the notice requirement without supplying that particular information, the court held, the omission of the information was not fatal:

> "ORS 656.265(1) requires that a worker give his or her employer notice of an accident that results in an injury or death. The first two sentences in ORS 656.265(2) address the form and contents of that notice. They provide: 'The notice need not be in any particular form. However, it shall be in writing and shall apprise the employer when and where and how an injury has occurred to a worker.' ORS 656.265(2).
>
> "Viewed in isolation, that text provides support for employer's position. Ordinarily, however, 'text should not be read in isolation but must be considered in context.' *Stevens v. Czerniak*, 336 Or 392, 401, 84 P3d 140 (2004). Context includes other provisions of the same statute. *Id.* In addition to the text on which employer focuses, ORS 656.265 identifies two other ways in which a worker may notify his or her employer. *The third sentence in subsection (2) provides that '[a] report or statement secured from a worker, or from the doctor of the worker and signed by the worker, concerning an accident which may involve a compensable injury shall be considered notice from the worker[.]' The phrase 'shall be considered notice' demonstrates that the third sentence describes an alternative way of providing notice; there would be no need for the legislature to state that a report or statement that meets the requirements of the third sentence 'shall be considered notice' if the report or statement also satisfied the criteria in the first two sentences of ORS 656.265(2).*
>
> "Textually, the notice contemplated by the third sentence of ORS 656.265(2) differs in at least two respects from that described by the first two sentences. The first two sentences describe a writing that the worker *gives* the employer; the third sentence refers to a statement or report that someone (presumably the employer) *secures* from the

worker or the worker's doctor. Additionally, the third sentence does not repeat the phrase 'when and where and how.' It rephrases that requirement and provides that any report or statement 'concerning an accident which may involve a compensable injury' shall be considered notice.

"ORS 656.265(6) refers to yet another way of providing notice of a work-related injury. That subsection directs the director of the Department of Consumer and Business Services (department) to promulgate uniform forms for workers to use to report workplace injuries to their employers. It provides that the failure to use the prescribed form 'shall not in itself, defeat the claim of the worker if the worker has complied with the requirement that the claim be presented in writing.' ORS 656.265(6). The last sentence implies that submitting a completed form will constitute notice even though, as claimant notes, the form that the director has prescribed does not require a worker to state 'when and where and how' the injury occurred but asks instead a more general question.

"The foregoing recitation of text and context leads to three observations. First, ORS 656.265 does not prescribe a single form of notice. Rather the statute explicitly provides that notice need not take a particular form and identifies three ways of providing notice: (1) a worker may give notice to the employer; (2) an employer may secure a report or statement from the worker or the worker's doctor; or (3) a worker may submit a prescribed form to the employer. Second, in identifying those different ways of providing notice, the legislature has referred to the content of the notice in different ways. The statute refers to (1) giving notice that apprises an employer 'when and where and how' the injury occurred; (2) securing a report or statement 'concerning an accident which may involve a compensable injury'; and (3) submitting a form that contains the information that the director prescribes."

*Vsetecka*, 337 Or at 508-10 (footnotes omitted; first emphasis added).

The court's reasoning reasonably may be applied to this case. Just as the "report or statement" provision of subsection (2) omits any reference to notice of "when and where and how" an injury occurred, it also omits any requirement that notice be in writing. Just as the omission suggests that

the legislature intended the "when and where and how" requirement not to apply to that alternative method of providing notice under ORS 656.265(2), it would seem logically to follow that it suggests that the legislature intended the writing requirement not to apply either.

It may be objected that reading the "report or statement" to apply to oral communications from the worker is inconsistent with other provisions that appear to assume that notice must be in writing. As we noted when describing the alternative construction, the second sentence of subsection (2) does plainly say that notice must be in writing. In addition, subsection (3) imposes a requirement of serving the notice by mail or personal delivery. Those provisions are inconsistent, however, only if it is assumed that they apply to the "report or statement" provision in the first place. As the Supreme Court explained in *Vsetecka*, that provision constitutes a separate method of providing notice, one that—notwithstanding the requirements that may apply to the other two methods—"shall be considered notice from the worker[.]" ORS 656.265(2). In other words, whatever requirements may apply to the other methods of satisfying the notice requirement described in ORS 656.265(1), a report or statement secured from the worker suffices. The other requirements simply do not apply.

It may also be objected that the "report or statement" provision at least implicitly assumes that notice will be given in writing because it requires the employer to deliver a "copy" to the worker once the report or statement has been secured. The word "copy," however, is not necessarily limited to writings. *Webster's* at 504 (defining "copy" to include "an imitation, transcript, or reproduction of an original work"). The legislature employs the term to refer to duplicates of audio recordings, *see, e.g.*, ORS 161.385(8)(b) ("The record may include a certified true copy of a tape recording of the proceeding[.]"), as well as reproductions of communications in different media from the form of the original, *see, e.g.*, ORS 192.440 ("If the public record is maintained in a machine readable or electronic form, the custodian shall provide copies in the form requested, if applicable. If the public record is not available in the form requested, it shall be made available in the form in which it is maintained."), and sometimes

specifically as a written documentation of an oral communication, *see, e.g.,* ORS 476.580 ("However, written copies of such oral order shall be filed and dispatched as soon after issuing such order as is conveniently possible[.]").

In short, the text of ORS 656.265 is susceptible of a construction that permits a worker to satisfy the statutory notice requirement by means other than written notice. Particularly in light of the Supreme Court's holding in *Vsetecka*, that construction even appears the more likely. There is, of course, the *dictum* in the same opinion that notice always must be in writing, but, as we have noted, that *dictum* itself is not easily reconciled with the reasoning on which the court relied in reaching the holding of the case. In consequence, regardless of which construction we adopt, we find ourselves at odds with some aspect of *Vsetecka*. On balance, it strikes us as more appropriate to adopt a construction that conforms to the reasoning that supports the holding of the case, even if at the expense of conformity with other aspects of the decision.

### B.   *Legislative History*

■   Thus far, our analysis of the text in context leads us to conclude that the legislature most likely intended ORS 656.265 to permit a worker to satisfy the notice requirement of subsection (1) by any of three different methods, one of which does not expressly require that the notice be presented in writing. That method requires that the employer secure from the worker a "report or statement" concerning an accident that may involve a compensable injury. ORS 656.265(2). Particularly in light of the Supreme Court's analysis of the statute in *Vsetecka* and its conclusion that the differences in phrasing between the different methods of providing notice have legal significance, the alternative construction becomes more difficult to sustain. That does not mean that the statute is not ambiguous, however. After all, the threshold of ambiguity is a low one. It does not require that competing constructions be equally tenable. It requires only that a competing construction not be "wholly implausible." *Owens v. MVD*, 319 Or 259, 268, 875 P2d 463 (1994); *State v. Walker*, 192 Or App 535, 542, 86 P3d 690 (2004). We turn, then, to the legislative history to determine whether there is anything in the

record of enactment that demonstrates that what we have concluded from the textual analysis is incorrect.

Our examination of that enactment history reveals nothing of the sort. In fact, the legislative history reveals little of pertinence to the issue. What is now ORS 656.265 originated in 1965, as section 30a of House Bill (HB) 1001, a significant restructuring of the state workers' compensation statutes. That section of the bill, as ultimately enacted, provided, in part:

> "(1)   Notice of an accident resulting in an injury or death shall be given immediately by the workman or his dependent to the employer, but not later than 30 days after the accident. The employer shall acknowledge forthwith receipt of such notice.

> "(2)   The notice need not be in any particular form. However, it shall be in writing and shall apprise the employer when and where and how an injury has occurred to a workman. A report or statement secured from a workman concerning an accident which may involve a compensable injury shall be considered notice from the workman and the employer shall forthwith furnish the workman a copy of any such report or statement.

> "(3)   Notice shall be given to the employer by mail, addressed to the employer at his last-known place of business, or by personal delivery to the employer or to a foreman or other supervisor of the employer. If for any reason it is not possible to so notify the employer, notice may be given to the board and referred to the department or the direct responsibility employer."

Or Laws 1965, ch 285, § 30a.

The bill was referred to the House Committee on Labor and Management. It appears that section 30a of the bill was discussed only once, and then only in general terms. A three-person panel of witnesses testified before the committee, summarizing the effect of each section of the proposed legislation. The minutes of the hearing reflect that one of the panel members, Charles Gill, director of what was then the State Industrial Accident Commission, explained that section 30a "requires the worker to give notice of the accident to his employer and failure to give notice within 60 days after

the accident is a possible bar to the claim." Minutes, House Committee on Labor and Management, Jan 25, 1965, 1. Bill Moshofsky, from the Committee on Fair Workmen's Compensation, added that "this section imposes on the workman some obligation to notify the employer of the accident. This allows the employer some chance to see whether there is a compensable injury." *Id.* Our review of the tape recordings of the hearings and the floor debates does not reveal anything else of relevance.

The legislative history thus may support a conclusion that the broader purpose of the statute is to require claimants to provide sufficient notice to enable the employer to determine whether an investigation is advisable. Beyond that, however, it says nothing about the purpose of the requirement that the claimant's notice be presented in writing.

The statute has been amended several times since 1965. In 1971, the legislature amended subsection (2) of the statute to add a provision that permitted a report or statement from the worker's doctor also to serve as notice to the employer. Or Laws 1971, ch 386, § 2. And, in 1995, the legislature extended the time period within which the worker must provide notice from 30 days to 90 days. Or Laws 1995, ch 332, § 29.

Some legislative history of the 1995 amendment at least arguably bears on the matter at hand. In hearings before a joint session of the Senate Labor and Government Operations Committee and the House Labor Committee, the drafter, Representative Kevin Mannix, explained that the amendment "first of all, changes the current law that at the beginning says you have 30 days to file written notice of a claim, to give you 90 days." Tape Recording, Senate Labor and Government Operations and House Labor Committee, SB 369, Jan 30, 1995, Tape 15, Side B. He explained that the purpose of that provision was to benefit the worker. *Id.* "At the other end of the spectrum," he explained, the statute provides that, "if a year has passed, even if employer knew about this, and nothing else was done; if you sat around a year and you have done nothing, your claim expires. * * * But if you have done nothing for a year and a written claim wasn't filed,

the claim expires." *Id.* (emphasis added). As we have noted, the remarks do at least arguably pertain to the issue before us; in fact, the Workers' Compensation Board cited them in support of its own initial interpretation of ORS 656.265 to require the worker to present written notice. *In the Matter of Kephart*, 54 Van Natta 1369, 1371 n 3 (2002). We are less inclined to rely on that history, however, as it post-dates the enactment of the actual statutory wording at issue. *Salem-Keizer Assn. v. Salem-Keizer Sch. Dist. 24J*, 186 Or App 19, 26, 61 P3d 970 (2003) (subsequent statements of legislators are not probative of the intent of statutes already in effect).

## C. *Third-Level Considerations*

Assuming for the sake of argument that the statute remains ambiguous, nothing in any of the relevant "third-level" canons of construction suggests that our tentative conclusion with respect to the meaning of ORS 656.265 is incorrect. To the contrary, relevant "third-level" considerations suggest that our conclusion is the only proper one.

In evaluating competing plausible interpretations of a statute, we are counseled to adopt the construction that is the one closest to what we anticipate the legislature would have intended us to adopt had it confronted the matter. *See, e.g., State v. Brooks*, 187 Or App 388, 398, 67 P3d 426, *rev den*, 335 Or 578 (2003). In conducting that inquiry, we are guided by what the legislature or the courts have identified as the broader purpose of the statute. *See, e.g., Linn-Benton-Lincoln Ed. v. Linn-Benton-Lincoln ESD*, 163 Or App 558, 570, 989 P2d 25 (1999) ("[A] court should attempt to construe the language of a statute in a manner consistent with its purpose.").

In this case, as we have noted, the legislative history suggests that the purpose of the statutory notice requirement that is expressed in ORS 656.265 is to ensure that the employer obtains information sufficient to enable the employer to determine whether an investigation into an accident is advisable. The courts have characterized the purpose of the statute in similar terms. In *Colvin v. Industrial Indemnity*, 301 Or 743, 747, 725 P2d 356 (1986), for example, the Supreme Court explained that the purpose of the notice

requirement is to "facilitate[ ] prompt investigation and diagnosis of the injury." Likewise, in *Vsetecka*, the court characterized the purpose of the notice provisions of ORS 656.265 as ensuring "prompt notice so that an employer can conduct a timely investigation into the nature and cause of a worker's injury." 337 Or at 510. The court added that it is clear that the legislature "did not intend to impose formalistic requirements on notice" as long as the worker provides enough information about an accident or injury "to put an employer on notice that the injury may be compensable and thus that an investigation may be advisable." *Id.* at 511.

An oral report or statement secured by an employer from a worker would seem to comply with those purposes, so long as the report or statement contains the required information. Imposing a requirement that the report or statement be presented in writing does not advance those identified purposes and, to the contrary, could serve to frustrate the intended operation of the statute.

D. *Application*

In this case, employer secured from claimant an oral report or statement that, on the previous day, she had injured her wrist at work. She explained to employer how the injury occurred and the particulars of the injury itself. Employer entered the information into its computerized database designed for reporting on-the-job injuries. No one suggests that the substance of the information in any way falls short of what the statute requires to constitute notice under ORS 656.265. Employer's sole contention is that, because claimant's communication was oral in form, it cannot constitute the notice that the statute requires. As we have noted, it is unlikely that the legislature intended that a report or statement secured from a worker would fail to qualify as "notice" within the meaning of the statute solely because it was not secured from the worker in written form. Imposing such a technical requirement, in fact, would seem to frustrate what it appears is plainly the purpose of the statute, particularly in a case when the substance of the worker's oral communication otherwise provides the employer with all the information that the statute requires.

We hold that the board erred in concluding that claimant failed timely to provide notice under ORS 656.265.

Reversed and remanded for reconsideration.

**ARMSTRONG, J.,** concurring.

I agree with the majority's conclusion that, on these facts, the notice requirement of ORS 656.265 is satisfied. I also agree that the best construction of the statute is to conclude that a report or statement secured by the employer need not be in writing from the worker. I write to explain that, to the extent that the statute does require a writing, that requirement is satisfied here.

The majority is correct to conclude that the Supreme Court's statement in *Vsetecka v. Safeway Stores, Inc.*, 337 Or 502, 510, 98 P3d 1116 (2004), that "the one constant, which the last sentence in subsection (6) makes clear, is that the notice must be in writing," is *dictum*. As the majority keenly observes, in *Vsetecka*, the claimant gave the employer written notice; therefore, the question whether the notice had to be in writing was not before the court and was not necessary to the decision. Thus, the court's statement that "the notice must be in writing" is *dictum* in the classic sense of the term. The majority is also correct that the statement is in tension with the ultimate conclusion in *Vsetecka*. Therefore, the majority's reasoning that we must follow the logic of *Vsetecka*'s holding rather than its *dictum* is sound. But, we need not necessarily reject the Supreme Court's *dictum* in this case. Even assuming that the Supreme Court was correct that the notice must be in writing, the writing requirement is satisfied here because the electronic record created by employer is, by operation of ORS 84.019, a writing. Before explaining the operation of that statute, I grapple further with the Supreme Court's *dictum* in *Vsetecka*.

In *Vsetecka*, the Supreme Court relied on ORS 656.265(6) to support its statement that "the one constant [among the three ways to provide notice], which the last sentence in subsection (6) makes clear, is that the notice must be in writing." 337 Or at 510. ORS 656.265(6) provides:

> "The director shall promulgate and prescribe uniform forms to be used by workers in reporting their injuries to their employers. These forms shall be supplied by all employers to injured workers upon request of the injured worker or some other person on behalf of the worker. The failure of the worker to use a specified form shall not, in

> itself, defeat the claim of the worker if the worker has complied with *the requirement that the claim be presented in writing.*"

(Emphasis added.) As the majority notes, subsection (6) "reflects a requirement that 'the claim' * * * be presented in writing." 202 Or App at 679. In other words, subsection (6) does not *impose* that requirement, it merely references it. The requirement that the claim be presented in writing comes from ORS 656.005(6), which defines "claim" to mean "a *written request* for compensation from a subject worker or someone on the worker's behalf." (Emphasis added.) It is undebatable that a claim for compensation must be presented in writing; the debate in this case is whether notice of a potentially compensable injury must be presented in writing. The significance of that distinction comes to light when one compares the language of ORS 656.265 with the Supreme Court's statement in *Vsetecka*. The "one constant" identified by the Supreme Court is not that the notice must be *presented* in writing, but "that the notice must be in writing." Thus, the Supreme Court's statement in *Vsetecka* could be understood to mean that, so long as there is a writing, the statute is satisfied and the source of the writing is irrelevant. Thus, it is possible to be faithful to both the holding and the *dictum* in *Vsetecka* by construing ORS 656.265(2) to permit an oral report or statement by a worker, reduced to writing by the employer, to constitute notice.

Under such a construction, claimant satisfied the notice requirement. Admittedly, entering claimant's statement into an electronic database seems to be an action of a different quality than physically taking pen to paper to record the statement. However, it is a distinction without a difference.

In 2001, Oregon passed the Uniform Electronic Transactions Act (UETA), codified at ORS 84.001 to 84.061. The UETA applies to electronic records, which are defined as records "created, generated, sent, communicated, received or stored by electronic means." ORS 84.004(7). For purposes of the act, " '[e]lectronic' means relating to technology having electrical, digital, magnetic, wireless, optical, electromagnetic or similar capabilities." ORS 84.004(5). However, the

UETA applies only to electronic records related to "transactions between parties, each of which has agreed to conduct transactions by electronic means. Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct." ORS 84.013(2); ORS 84.007. A "transaction" is "an action or set of actions occurring between two or more persons relating to the conduct of business, commercial or governmental affairs." ORS 84.004(16). Most crucially to this case, ORS 84.019(3) provides that, "[i]f a law requires a record to be in writing, an electronic record satisfies the law."

The transaction in question here consists of the reporting and recording actions by claimant and employer, respectively, relating to claimant's purported on-the-job injury. An on-the-job injury is certainly a business affair, and the actions by claimant and employer were related to it; therefore, this was a transaction for purposes of ORS 84.004(16). Furthermore, it can be inferred from the parties' conduct that both agreed to conduct the transaction by electronic means. *See* ORS 84.013(2). Thus, the reporting and recording of claimant's injury was a transaction within the scope of the UETA. Consequently, by operation of ORS 84.019(3), the electronic record that employer created of claimant's statement was a writing. Thus, the employer secured an oral report or statement from claimant and reduced it to a writing, satisfying the notice requirement of ORS 656.265.

The fact that neither party cited the UETA to us or to the Workers' Compensation Board is of no import. Claimant argued to the board below that, "[o]nce text is entered into a database, a 'writing' exists in fact, only to be retrieved by the party in control of such, the employer. To deny the existence of a 'writing' * * * is to ignore the very nature of electronic communications." She renews that argument before us. Claimant's arguments capture the underlying policy behind the UETA, although she does not cite that statute. Nonetheless, "the parties may not prevent a court from noticing and invoking an applicable statute by relying only on other sources of law." *Miller v. Water Wonderland Improvement District*, 326 Or 306, 309 n 3, 951 P2d 720 (1998). Thus, we may consider the effect of the UETA on this case.

In sum, employer secured an oral statement from claimant and reduced it to writing by entering it into its electronic database. Thus, to the extent that ORS 656.265 requires a writing, that requirement is satisfied on these facts.

For those reasons, I concur in the majority's result.